[Civ. No. 42240. First Dist., Div. Two. June 6, 1979.]

JAMES D. JACKSON, Cross-complainant and Appellant, v.
AETNA LIFE AND CASUALTY COMPANY,
Cross-defendant and Respondent.

**COUNSEL**

Daniel C. Miller and Dennis C. Birkhimer for Cross-complainant and Appellant.

Berry & Berry and Peter R. Gilbert for Cross-defendant and Respondent.

**OPINION**

**MILLER, J.**—This appeal is taken from an order sustaining respondent's demurrer to appellant's second amended cross-complaint for damages resulting from negligence and for reformation.

Cross-complainant and appellant James D. Jackson is the owner of three parcels of commercial real estate in Berkeley, California. In September 1973, appellant leased one of these properties to cross-defendant David Morris, who operated a bakery therein. The written lease agreement for the property contained, inter alia, the following two provisions:

"9. INDEMNIFICATION OF LESSOR: Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused."

"11. INSURANCE: Lessee, at his expense, shall maintain public liability and property damage insurance insuring Lessee and Lessor with minimum coverage as follows: 100/300,000 LIABILITY INSURANCE, TWENTY-FIVE THOUSAND PROPERTY DAMAGE AND PLATE GLASS INSURANCE."

Morris secured the required insurance from cross-defendant and respondent Aetna Life and Casualty Company, through the carrier's duly appointed agent, James Uren. The agent examined the subject lease agreement, but failed to name or add appellant as an additional insured party, although respondent would and should have routinely included appellant as an additional insured on its policy with little or no extra charge.

On May 29, 1975, plaintiff Barbara Sunday, an employee of cross-defendant Morris, while in the course and scope of her employment, leaned, or attempted to sit on, the handrail of the back porch of the subject premises. Due to a latent defect, the rail gave way, causing her to fall to the ground below and suffer serious injury.

Sunday brought an action for personal injury against appellant, who was the only named defendant in the suit. Appellant filed an answer to the complaint and cross-complained for indemnity and declaratory relief against Morris and Aetna. Cross-defendants' demurrer to the cross-complaint was overruled.

Thereafter, cross-defendants filed an answer to the complaint, following which they moved for a judgment on the pleadings, which was granted with leave to amend.

Appellant's second amended cross-complaint was filed, and again respondent demurred. This time the demurrer was sustained without leave to amend.

The principal question on appeal is whether privity of contract is required to state a cause of action for negligent breach of contractual duty.

Respondent contends that as a matter of law Aetna owed no duty to appellant. But, as Prosser points out, "Cases have been quite infrequent in which even the claim has been advanced that the defendant through his negligence has prevented the plaintiff from obtaining a prospective pecuniary advantage; and the usual statement is that there can be no cause of action in such a case. There are, however, a few situations in which recovery has been permitted, all of them apparently to be justified upon the basis of some special relation between the parties." (Prosser, Handbook of the Law of Torts (4th ed. 1971) p. 952.) As examples of where recovery is permissible, Prosser cites two California Supreme Court cases, both of which held that the negligent preparation of a will may result in liability to the intended beneficiaries. (*Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685].)

In *Biakanja, supra,* a notary public prepared a will which was not properly attested and therefore invalid. The Supreme Court sustained a negligence action brought by the intended beneficiary against the notary, thus recognizing a duty of care to guard against foreseeable damage to the economic expectations of third persons, despite their lack of privity with the defendant. The court refused to follow any blanket rule regarding negligent injury to pecuniary advantage, but rather applied the traditional test of whether a duty should be imposed: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm. (Cf. Prosser, Torts (2d Ed. 1955), §§ 36, 88, 107, pp. 168, 172, 544-545, 747; 2 Harper and James, Torts (1956), § 18.6, p. 1052.)" (49 Cal.2d at p. 650, numerical subdivisions added.)

In *Lucas* v. *Hamm, supra,* the court applied these factors in holding that the defendant attorney's duty of care in drafting a will extended to the intended beneficiary. The court stated, "As in *Biakanja,* one of the main purposes which the transaction between defendant and the testator intended to accomplish was to provide for the transfer of the property to plaintiffs; the damage to plaintiffs in the event of invalidity of the bequest was clearly foreseeable; it became certain, upon the death of the testator without change of the will, that plaintiffs would have received the intended benefits but for the asserted negligence of defendant; and if persons such as plaintiffs are not permitted to recover for the loss resulting from negligence of the draftsman, no one would be able to do so and the policy of preventing future harm would be impared." (56 Cal.2d at p. 589.)

In *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], a savings and loan company, which furnished financing to an irresponsible tract developer and wielded extensive control over the project, was held liable for economic loss to plaintiffs who had purchased poorly designed homes built by the developer. Following the path carved out by *Biakanja* and *Lucas,* the Supreme Court declared: " 'Privity of contract is not necessary to establish the existence of a duty to exercise ordinary care not to injure another, but such duty may arise out of a voluntarily assumed relationship, if public policy dictates the existence of such a duty.' " (69 Cal.2d at p. 865, quoting from *Merrill* v. *Buck* (1962) 58 Cal.2d 552, 561-562 [25 Cal.Rptr. 456, 375 P.2d 304].) Applying the criteria for establishment of duty set forth in *Biakanja,* the court found that the lender's transactions were intended to affect plaintiffs significantly, that it would have reasonably foreseen the risk of harm to plaintiffs, that plaintiffs did suffer injury, that the injury to plaintiffs was closely connected to the lender's conduct, that such conduct warranted substantial moral blame, and that the admonitory policy of the law of torts called for imposition of liability on the defendant. (*Id.,* at pp. 866-867.)

We are not unmindful of a parallel line of cases, starting with *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813] which refused to recognize a cause of action based on negligent, as opposed to intentional, conduct that interferes with the performance of a contract between third parties. (See also, *Costello* v. *Wells Fargo Bank* (1968) 258 Cal.App.2d 90, 94-96 [65 Cal.Rptr. 612]; *Stromer* v. *City of Yuba City* (1964) 225 Cal.App.2d 286, 288-289 [37 Cal.Rptr. 240].)

In *Adams* v. *Southern Pac. Transportation Co.* (1975) 50 Cal.App.3d 37 [123 Cal.Rptr. 216], the court discussed the doctrinal discord between the *Fifield Manor* rule and the *Biakanja, Lucas, Connor* line of cases: "*Biakanja* v. *Irving* and *Lucas* v. *Hamm* recognize a duty of care to guard against foreseeable damage to the economic expectations of third persons; *Fifield Manor* v. *Finston* negates that duty. Paradoxically, *Biakanja* and *Lucas* demand reasonable care to protect the defeasible expectation of a testamentary beneficiary; *Fifield* withholds that protection from comparatively fixed, comparatively vital earnings. The social value of the lost legacy is recognized, that of lost livelihood denigrated. If foreseeability of harm is the fundamental criterion of liability, it is irrelevant that one loss stems from professional malpractice, the other from a physical accident." (50 Cal.App.3d at pp. 45-46.)

In *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674], the plaintiff brought suit against defendant State Farm for payment of a judgment recovered against Anthony and Sandra Alves, who at the time of the subject accident in which plaintiff was injured were insured by State Farm under an automobile liability insurance policy. Subsequent to the accident, State Farm discovered that in his application Alves had made a material misrepresentation and the carrier denied validity of the policy and cross-complained, seeking a declaration that the policy was void *ab initio* because of the misrepresentation. Plaintiff contended that State Farm was estopped to rescind the policy six months after the accident because 1) State Farm had led the Alveses to believe they were insured, and 2) it was negligent in failing to discover the misrepresentation within a reasonable period of time. The trial court ruled in favor of State Farm, holding that it had issued the policy in reliance upon the misrepresentation, that rescission was proper, and that the carrier had acted promptly upon the discovery of the misrepresentation.

In reversing the trial court, the Supreme Court recognized the independent duty of an automobile insurer to "undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy. This duty directly inures to the benefit of third persons injured by the insured." (*Id.,* at p. 663.) The court continued: "Such an injured party, who has obtained an unsatisfied judgment against the insured, may properly proceed against the insurer; the insurer cannot then successfully defend upon the ground of its own failure reasonably to investigate the application." (*Ibid.*)

The Supreme Court, in discussing the insurer's role as a public service entity, stated: "Because of the 'quasi-public' nature of the insurance business and the relationship between the insurer and the insured . . . the rights and obligations of the insurer cannot be determined solely on the basis of rules pertaining to private contracts negotiated by individual parties of relatively equal bargaining strength. In the case of the standardized contract prepared by the economically powerful entity and the comparatively weak consumer we look to the reasonable expectation of the public and the type of service which the entity holds itself out as ready to offer." (71 Cal.2d at p. 669.)

On the issue of privity the court referred to the *Biakanja, Lucas* and *Connor* line of cases, finding the rules therein equally applicable to automobile liability insurers. (*Id.,* at pp. 674-677.)

Respondent cites *Austero* v. *National Cas. Co.* (1976) 62 Cal.App.3d 511 [133 Cal.Rptr. 107] for the proposition that, absent a contractual duty, mere foreseeability of harm is insufficient to fix liability for a negligent breach of contract. In *Austero,* plaintiffs filed a bad faith suit against Mr. Austero's disability insurer National Casualty Company. Mrs. Austero alleged emotional distress emanating from a bad faith breach of the implied covenant of good faith and fair dealing. Although she admitted she was not a party to the insurance contract, she argued that she was a foreseeable plaintiff and that a reasonable man in the position of the insurer would have foreseen that its unreasonable bad faith refusal to pay her husband's claim for disability would result not only in emotional distress to him, but also to her. The court stated:

"We agree with plaintiff that emotional distress on her part was reasonably foreseeable, but our question is, 'So what?' Foreseeability of harm is an important factor in fixing liability for negligently caused injury and may be an important factor in establishing tort liability generally, but it is only one of a number of policy factors to be considered. (See *Rowland* v. *Christian,* 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Amaya* v. *Home Ice, Fuel & Supply Co.,* 59 Cal.2d 295, 309-310 [29 Cal.Rptr. 33, 379 P.2d 513] [overruled on other grounds by *Dillon* v. *Legg,* 68 Cal.2d 728 (69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316)]; *Lucas* v. *Hamm,* 56 Cal.2d 583, 588 [15 Cal.Rptr. 821, 364 P.2d 685]; *Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; *Commercial Standard Ins. Co.* v. *Bank of America,* 57 Cal.App.3d 241, 248 [129 Cal.Rptr. 91]; *Derrick* v. *Ontario Community Hospital,* 47 Cal.App.3d 145, 153 [120 Cal.Rptr. 566].)

"Whether for better or worse, the historical development of a tort is an important factor in determining its scope (see Prosser, Law of Torts (4th ed. 1971) pp. 19-21), and, thus far, liability for 'bad faith' has been strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship. Where no such relationship exists, no recovery for 'bad faith' may be had. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 576 [108 Cal.Rptr. 480, 510 P.2d 1032].)" (62 Cal.App.3d at pp. 516-517.)

Initially, we note that the *Austero* quotation is based on an early line of California cases. As discussed at length in *Adams* v. *Southern Pac. Transportation Co., supra*:

"Earlier California decisions had firmly established a method for the analysis of negligence liability. That method had its starting point in a judicial (i.e., nonjury) inquiry into the existence of a duty of care. (See *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513], overruled in *Dillon* v. *Legg, supra*; *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 488, 493.) Conventional negligence analysis next turned to the question of foreseeability. The duty of care was limited by the doctrine of *Palsgraf* v. *Long Island R. Co.,* 248 N.Y. 339 [162 N.E. 99, 59 A.L.R. 1253], which excluded recovery by persons outside a reasonably foreseeable zone of danger. (See 4 Witkin, *op. cit.,* Torts, § 489.)

"*Dillon* v. *Legg* inagurated an apparent revision of the conventional methodology. *Dillon* (68 Cal.2d at p. 741) postulated reasonable foreseeability as the primary, court-determined test of liability and relegated to a secondary, negative role the policy factors involved in the duty-of-care issue. Although *Dillon* v. *Legg* emanated from a sharply divided court, its analytical approach was confirmed by a heavier majority in *Rodriquez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669].

"In *Rowland* v. *Christian* the court set forth Civil Code section 1714 as the fundamental rule of negligence liability in California, rejecting common law rules which had traditionally limited the liability of land possessors. The court referred to the duty-of-care concept as a 'departure from [the] fundamental principle' voiced in Civil Code section 1714 (69 Cal.2d at p. 112). Like *Dillon,* the *Rowland* decision relegated duty determinations to a secondary, rejective role.

"Nothing in the language, purpose, or history of Civil Code section 1714 confines it to suits against land possessors. Indeed, *Rowland* v. *Christian* refers to the real estate cases as 'One of the areas' where the courts had departed from the fundamental concept of section 1714. (69 Cal.2d at p. 113.) Later decisions explicitly or implicitly recognize section 1714 as a general principle of negligence liability in California. (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 821 [119 Cal.Rptr. 858, 532 P.2d 1226]; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 865 [106 Cal.Rptr. 388, 506 P.2d 212]; *Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 177, fn. 2 [101 Cal.Rptr. 908, 496 P.2d 1276]; *Holliday* v. *Miles, Inc.* (1968) 266 Cal.App.2d 396, 400-401 [72 Cal.Rptr. 96].)

"The Supreme Court has not yet revealed the doctrinal relationship between *Dillon* v. *Legg* and Civil Code section 1714. *Dillon* and *Rowland* have this much in common: they move the duty-of-care inquiry from its conventional position as the starting point of liability analysis and relegate it to a secondary, rejective role. Inferably, *Rowland* v. *Christian* relies—no less than *Dillon* v. *Legg*—upon foreseeability of harm as the prime test of negligence liability." (50 Cal.App.3d at pp. 41-42.)

Even if duty of care is the starting point for an analysis of negligence liability, we find *Austero* distinguishable from the case at bench. Mrs. Austero merely claimed to be a foreseeable plaintiff, whereas appellant herein, as in *Biakanja* and *Lucas,* was an intended beneficiary of the instant contract. Although respondent argues that there is no evidence indicating that either Morris or Aetna intended to benefit Jackson by their contract, that issue is a question of fact to be determined at trial. ■ A general demurrer admits the truth of all material factual allegations in a cross-complaint. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) On appeal from the decision on a demurrer, the facts pleaded must be accepted as true. (*American Philatelic Society* v. *Claibourne* (1935) 3 Cal.2d 689, 699 [46 P.2d 135].)

■ We therefore find that this is a case where the *Biakanja* test applies.

1) As in *Biakanja,* one of the main purposes that the Morris-Aetna contract was intended to accomplish was to comply with the lease provisions and provide protection for Jackson. Allegations in the cross-complaint stated that pursuant to provisions in the Jackson-Morris lease, Morris agreed to include appellant as an additional insured on the policy

issued by Aetna to Morris. Aetna, through its agent, inspected the lease agreement. If there was no intent to conform to the lease covenants to the benefit of Jackson, there would be no reason to show the agent the lease.

2) Aetna could reasonably foresee the risk of harm to appellant. Aetna knew or should have known that failure to include Jackson as an insured would render Jackson personally liable for an injury which occurred on the leased premises.

3) It is certain that Jackson has, in fact, suffered injury by personally being sued by Ms. Sunday and faces potential personal liability for Sunday's claim.

4) The injury suffered by appellant is closely connected to Aetna's conduct. But for Aetna's negligent exclusion of Jackson as an insured, appellant would not now be threatened with personal liability.

5) Substantial moral blame attaches to Aetna's conduct. In view of the axiom that the business of insurance is quasi public in character (*Barrera v. State Farm Mut. Automobile Ins. Co., supra,* 71 Cal.2d at p. 668, fn. 5), the reasonable expectation of both the public and the insured is that the insurer will duly perform its basic commitment: to provide insurance. (*Id.,* at p. 669.) When an insurance carrier reviews a lease requiring that the lessor be named as an insured and then omits the lessor as an insured, it fails to fulfill its basic obligation.

6) Public policy mandates that insurance companies honor their basic obligations. Rules that tend to discourage negligence and/or misconduct are particularly appropriate when applied to a quasi public industry.

In view of the foregoing, we can only conclude that the negligent omission of an intended insured on a policy issued by Aetna to Morris is the basis for a cause of action by the intended insured who, foreseeably, has been damaged by the omission.

Appellant next contends that an intended third party beneficiary of an insurance contract can maintain an action for reformation.

In *Cantlay v. Olds and Stoller Inter-Exchange* (1932) 119 Cal.App. 605 [7 P.2d 395], the plaintiff, an intended third party beneficiary was the owner of certain trucks engaged in hauling for the Eastman Company. Both Cantlay and Eastman had separate insurance policies with the

defendant. As a result of representations made by the insurance carrier that a blanket policy issued to Eastman extended coverage to Cantlay, Cantlay cancelled his policy. A loss occurred, the carrier denied coverage to Cantlay and a judgment was entered against Cantlay. Subsequently, an action for reformation of the policy was permitted by the trial court and upheld by the Court of Appeal.

Respondent argues that *Cantlay* is distinguishable from the case at bench in that Cantlay and Eastman intended that Cantlay be covered by the policy, whereas there is no evidence showing that either Morris or Aetna intended to benefit Jackson. As mentioned above, a general demurrer admits the truth of all material factual allegations and, on appeal, the pleaded facts must be accepted as true. It is for the trier of fact to determine whether sufficient evidence supports the allegations.

We need not consider appellant's contention that he is entitled to an equitable lien on the policy proceeds, since this claim was not raised in the cross-complaint.

In conclusion, we find that appellant, in his cross-complaint, stated a cause of action for both negligence and reformation.

The order below is reversed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied July 6, 1979, and respondent's petition for a hearing by the Supreme Court was denied August 22, 1979.