[No. F003048. Fifth Dist. Dec. 5, 1984.]

GEORGE J. GIBSON et al., Plaintiffs and Appellants, v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY,
Defendant and Respondent.

## Counsel

Gerald T. Huntley for Plaintiffs and Appellants.

Stockdale, Peckman, Estes & Werner, Stockdale, Peckman & Werner and Paul F. Sowa for Defendant and Respondent.

## Opinion

**HAMLIN, J.**—Plaintiffs, George J. Gibson and Loriene Gibson, appeal from a judgment dismissing their complaint against defendant, Government Employees Insurance Company (GEICO), for breach of fiduciary duty in failing to inform plaintiffs of the availability and potential need for "underinsured motorist" coverage, as well as the inadequacy of plaintiffs' $3,000 medical payments benefit. Plaintiffs' complaint was dismissed after defendant's general demurrer was sustained and plaintiffs failed to file a timely amendment to their complaint.

This appeal requires us to decide whether an insurer owes a fiduciary duty to advise its insureds, who in this case regularly renewed their policy over a period in excess of 20 years, of (1) the availability of coverage in addition to that requested and (2) the inadequacy of their policy limits. We will conclude that, absent some conduct on the part of the insurer consistent with assuming broader duties, the insurer's fiduciary duties are limited to those arising out of the insurance contract and do not encompass the duties asserted. We will affirm the judgment.

### Procedural and Factual Background

Plaintiffs complained against defendant to recover $55,000 unreimbursed damages they suffered as a result of Kerry Lytle's automobile striking plaintiff George J. Gibson, who was crossing the street with plaintiff Loriene

Gibson, his wife. They also sought $10,000 punitive damages based on wilful breach of the fiduciary duty on which they relied.

Kerry Lytle's automobile insurance policy had limits of $25,000 per person and $50,000 per accident. Plaintiff George J. Gibson received $25,000 and Loriene Gibson received $10,000 under Lytle's policy. George Gibson also received $10,000 from Lytle personally. Their damages exceeded $100,000, leaving $55,000 unreimbursed.

Defendant demurred to plaintiffs' complaint; the trial court sustained the demurrer and gave plaintiffs 30 days within which to amend their complaint. More than 30 days later plaintiffs filed an amendment to their complaint. To the paragraph describing plaintiffs' reliance on defendant to cover plaintiffs' insurance needs, plaintiffs added only a clause describing their further reliance on defendant to advise them of additional coverage available in the insurance industry. Defendant moved to dismiss on the ground that plaintiffs failed to amend their complaint within the 30 days allowed. The trial court granted defendant's motion and entered a judgment of dismissal. This appeal followed.

Plaintiffs' failure to file a timely amendment to their complaint is functionally equivalent to an election not to amend and to stand on the complaint as originally filed for purposes of appellate review. ■ "The order sustaining the demurrer is not a final judgment and is not itself appealable; the appeal is taken from the judgment of dismissal, and in that appeal the correctness of the ruling on demurrer may be reviewed." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 843, pp. 2448-2449.)

## DISCUSSION

I. *Does defendant, as an insurer, owe a fiduciary duty to plaintiffs as its insureds?*

Initially, the nature of a fiduciary relationship was recently described in *Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369 [193 Cal.Rptr. 422]. Although the facts in *Barbara A.* did not touch upon the relationship between insurer and insured, the court's general discussion of fiduciaries is instructive. ■ Specifically, the court stated: " '[F]iduciary' and 'confidential' have been used synonymously to describe ' ". . . any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he [or she] voluntarily accepts or assumes to accept

the confidence, can take no advantage from his [or her] acts relating to the interest of the other party without the latter's knowledge or consent. . . ." ' [Citations omitted.] Technically, a fiduciary relationship is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client [citation omitted], whereas a 'confidential relationship' may be founded on a moral, social, domestic, or merely personal relationship as well as on a legal relationship. [Citations omitted.] The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." (*Id.*, at pp. 382-383.)

■ Although the California Supreme Court has not been presented a case squarely posing the question whether the relationship between insurer and insured is properly deemed a fiduciary one, its most recent discussion of the subject leaves little room for doubt. In *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, at pages 767-769 [206 Cal.Rptr. 354, 686 P.2d 1158], the court stated: "The principal issue raised by this appeal is whether, and under what circumstances, a breach of the implied covenant of good faith and fair dealing in a commercial contract may give rise to an action in tort. Standard contends that a tort action for breach of the implied covenant has always been, and should continue to be, limited to cases where the underlying contract is one of insurance. Seaman's, pointing to several recent cases decided by this court and the Courts of Appeal, challenges this contention. A brief review of the development of the tort is in order.

"It is well settled that, in California, the law implies in *every* contract a covenant of good faith and fair dealing. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 576, p. 493; see, e.g., *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 . . .; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573 . . .; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 . . .; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 . . . ['*in every contract,* including policies of insurance, there is an implied covenant of good faith and fair dealing . . . .' (Italics added.)]) Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement. (1 Witkin, *op. cit. supra,* at p. 493.)

" . . . . . . . . . . . . . . . . . . . .

"While the proposition that the law implies a covenant of good faith and fair dealing in all contracts is well established, the proposition advanced by Seaman's—that breach of the covenant always gives rise to an action in

tort—is not so clear. In holding that a tort action is available for breach of the covenant in an insurance contract, we have emphasized the 'special relationship' between insurer and insured, *characterized by elements of public interest, adhesion, and fiduciary responsibility. (Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at p. 820.) No doubt there are other relationships with similar characteristics and deserving of similar legal treatment." (Italics added.)[1]

Assuming then that the relationship between an insurer and its insured is a fiduciary one, it remains to determine how far the umbrella of fiduciary protection is to extend.

■■■ II. *Did defendant's failure to inform plaintiffs of (1) the availability of "underinsured motorist" coverage and (2) the present inadequacy of $3,000 medical pay policy limits constitute a breach of the defendant's fiduciary duty to plaintiffs?*

In all of the insurance cases relied upon by the Supreme Court in deciding *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* the covenant of good faith and fair dealing, for breach of which a tort action may arise, extended only to the limits of the insurance coverage afforded by the insurer to the insured, i.e., the fiduciary duty of the insurer was coextensive with the four corners of the contract of insurance entered into between it and its insured. Thus, in *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818-819 [169 Cal.Rptr. 691, 620 P.2d 141], the court stated in part: "The implied covenant imposes obligations not only as to claims by a third party but also as to those by the insured. [Citations omitted.] In both contexts the obligations of the insurer 'are merely two different aspects of the same duty.' [Citations omitted.] . . . For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it again must give at least as much consideration to the latter's interests as it does to its own. [Citation omitted.]"

The focus of the court in *Egan* was the right of the insured to receive the benefits of the contract of insurance; this is consistent with the court's earlier reliance upon the Restatement of Contracts in *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 922, footnote 5 [148 Cal.Rptr. 389, 582

---

[1]In *Spindle* v. *Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 712 [152 Cal.Rptr. 776], the court described the relationship of insurer and insured as a fiduciary one, relying upon the dissenting opinion of Justice Roth in *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]; the relationship was also characterized as fiduciary in *Mello* v. *Occidental Life Ins. Co.* (Cal.App.), hg. granted February 3, 1983, but the appeal was subsequently dismissed pursuant to stipulation on April 13, 1983.

P.2d 980]: "As stated by the draftsmen of the Restatement of Contracts, '[t]he phrase "good faith" is used in a variety of contexts, and its meaning varies somewhat in the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes [from consideration] a variety of types of conduct characterized [in other contexts] as involving "bad faith" because they violate community standards of decency, fairness or reasonableness.' (Rest.2d Contracts (Tent. Draft Nos. 1-7) § 231, com. a.)" (See also *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 279 [142 Cal.Rptr. 681].)

In their complaint, plaintiffs allege that they purchased a policy of automobile liability insurance from defendant in about 1959 and that the policy continued and was in effect on the date of the accident, October 19, 1981. Presumably, the policy issued by defendant was that required by law, meeting the minimum coverage limits and other requirements mandated by Insurance Code section 11580.1 and including "uninsured motorist coverage" as required by Insurance Code section 11580.2.[2] Therefore, to the extent plaintiffs had suffered a loss compensable under either the general liability provisions of their policy or the uninsured motorist provisions, plaintiffs' reasonable and justifiable expectations under the terms of their policy would warrant imposition on defendant of a duty to act fairly and in good faith with respect to claims filed by third parties against plaintiffs or claims filed by plaintiffs themselves.

Without attempting to hypothesize other reasonable and justifiable expectations which plaintiffs might entertain pursuant to the terms of the policy, it is clear from plaintiffs' complaint that defendant's breach of its fiduciary duty and violation of the covenant of good faith and fair dealing, *if any*, did not arise under the contract but outside of it. Plaintiffs do not allege that defendant failed in any way to perform pursuant to the terms of the contract but, rather, contend that defendant failed to make available to plaintiffs "underinsured motorist" coverage or, alternatively, to inform plaintiffs of the availability of such coverage elsewhere in the industry. They also allege that defendant failed to inform plaintiffs that their medical pay coverage with limits of $3,000, apparently obtained by plaintiffs in 1959 and renewed unchanged to the date of the accident, was inadequate in light of greatly increased medical costs in the intervening 22-year period.

The only allegation in plaintiffs' complaint with respect to the bases for their "expectations" that defendant would advise them of or make available

---

[2]All further statutory references are to the Insurance Code unless otherwise stated.

to them coverage beyond that for which plaintiffs had contracted appears at paragraph 20, in which plaintiffs allege: "Since 1959, when plaintiffs bought their initial policy of automobile insurance from defendants, and at which time they were assured that defendant GEICO would cover their needs, plaintiffs have relied upon defendant GEICO to provide the coverage necessary for their protection, and to inform plaintiffs of such coverage and needs." As defendant correctly points out, there is no mention whatsoever in plaintiffs' complaint of any advertising or representation made by defendant with respect to the nature and extent of the coverage offered by it. Moreover, there is nothing in plaintiffs' complaint concerning any promises, guarantees, or warranties made by defendant, through advertising or otherwise, that defendant would "obtain comprehensive and adequate insurance for plaintiffs," that defendant "held itself to have a great deal of authority in the matter," or that plaintiff George Gibson "was persuaded to go with defendant by defendant's promises of comprehensive insurance protection." This court must rely only upon those allegations contained in the complaint, and any supplemental allegations in plaintiffs' brief can add nothing to this court's assessment of defendant's duty.

Plaintiffs have not cited, and we have not found, any case which extends either a fiduciary duty or a covenant of good faith and fair dealing owed by an insurer or insurance company to its insured beyond the terms of the insurance contract in force between them. ■ Notwithstanding plaintiffs' characterization of themselves as "not insurance experts" and "unskilled in matters of insurance," an insured person's initial decision to obtain insurance and the corresponding decision of an insurer to offer coverage remain, at the inception of the contract at least, an arm's length transaction to be governed by traditional standards of freedom to contract. This was made clear in *Farmers Ins. Exchange* v. *Cocking* (1981) 29 Cal.3d 383 [173 Cal.Rptr. 846, 628 P.2d 1] in which the Supreme Court rejected the appeal of a wife who had been injured while a passenger in a car driven by her husband and who was denied coverage under his automobile liability policy pursuant to a clause excluding from such coverage other persons insured under the policy. The court noted that such clauses are specifically authorized by section 11580.1, subdivision (c)(5). It then pointed to the public policy provisions of Insurance Code section 11580.05: " 'The Legislature declares that *the public policy of this state* in regard to provisions authorized or required to be included in policies affording automobile liability insurance or motor vehicle liability insurance issued or delivered in this state *shall be as stated in this article,* [and] that *this article expresses the total public policy of this state respecting the contents of such policies,* . . .' " (*Farmers Ins. Exchange, supra,* at p. 388.) Thus, while recognizing that courts might disagree, the Supreme Court concluded such disagreement afforded "no justification whatever for the substitution of our own view of

what is proper public policy for that of the Legislature. [Citation omitted.]" (*Id.,* at pp. 388-389.)

Moreover, with respect to the insured's challenge on equal protection grounds, the court stated: "[T]he Legislature has merely excluded one class from mandatory liability coverage, consistent with a preexisting judicial rule, founded upon freedom of contract and the insurer's legitimate interest in minimizing future losses attributable to fraud or collusion. . . . [¶] The decision of a carrier whether to offer, or of a prospective insured to accept, the various kinds of liability insurance is one which the Legislature reasonably might well leave to the insurer and insured, respectively. To hold otherwise and, in effect, to require family member liability coverage against the better judgment of the contracting parties would constitute an unprecedented judicial interference into private contractual and economic arrangements in direct contravention of the public policy legislatively expressed in section 11580.1." (*Id.,* at pp. 390-391.)

As defendant points out in the instant case, section 11580.2 required at the time defendant issued its policy of insurance to plaintiffs that automobile liability insurance policies include protection against uninsured motorists. Significantly, section 11580.26, subdivision (e), provides in part, "A motor vehicle which has at least the minimum property damage liability limits required pursuant to Section 16056 of the Vehicle Code shall not be held to be an uninsured motor vehicle even when such property damage liability limits are not sufficient to compensate for all property damage caused by the property owner or operator of the vehicle." This language is consistent with the decision in *Travelers Ins. Co.* v. *Bouzer* (1974) 39 Cal.App.3d 992 [114 Cal.Rptr. 651]. There the court rejected the claim of an injured person who was left uncompensated when the maximum coverage available under the tortfeasor's automobile liability policy was exhausted in satisfying the claims of other injured persons. It stated: "To accept defendant's proposition would effectually convert uninsured motorist coverage into a policy of excess accident insurance, and not excess insurance with any fixed limits, but insurance 'open ended' at least to the limits of the uninsured motorist coverage. That is not the coverage for which the insured paid a premium, nor would it conform to any rational public policy. We hesitate to contemplate what premiums insured motorists would have to pay for uninsured motorist coverage should this court declare that to be the proper interpretation of the legislative intent." (*Id.,* at p. 995.) (See also *Greene* v. *Safeco Insurance Co.* (1983) 140 Cal.App.3d 535, 539 [189 Cal.Rptr. 616]; *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co., supra,* 76 Cal.App.3d at pp. 279-280.)

Thus, it seems clear that any fiduciary duty existing between an insurer and its insured is governed by the terms of the insurance contract

in effect between them; to the extent there is no contract, i.e., because the insurer has not extended coverage for the risk by which the insured has suffered a loss, the relationship between the parties is not controlled by principles of strict fiduciary responsibility. An insured who has obtained liability coverage reasonably expects to be protected from losses covered by the policy and likewise expects the insurer to stand by its part of the bargain in affording such coverage. The elements of adhesion, one-sidedness, and the potential for unfair and oppressive conduct are evident when the insurer attempts to back out of the risks it has contracted to protect against or otherwise take advantage of the insured. However, the same policy considerations do not apply beyond the terms of the policy. Insurance is a competitive industry; the insured who may be tied to one insurer for purposes of processing a claim or seeking a defense is not so tied in obtaining insurance for greater coverage or against different risks from other insurance carriers. Thus the adhesive elements which inhere in the claims aspect of insurance are missing in the marketplace aspect.

Plaintiffs do not allege that defendant acted as a broker in its dealings with plaintiffs. Indeed, they could not under the circumstances of this case. Defendant was the insurer and anyone acting on its behalf could not be a broker within the meaning of section 1623: "An insurance broker is a person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer." (See generally, Annot. (1976) 72 A.L.R.3d 704-729.)

Thus the case of *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 816-817 [180 Cal.Rptr. 628, 640 P.2d 764], is distinguishable. There, the Supreme Court affirmed a jury verdict against an insurance broker *who had been engaged by the insured* and who negligently obtained a replacement policy in a face amount $200,000 lower than that required by the insured's "excess coverage" carrier, thus leaving a substantial "gap" in the insured's protection. Similarly, none of the extrajurisdictional cases relied upon by plaintiffs herein for the premise that negligent failure to obtain adequate insurance coverage is actionable rely upon a relationship between an insurer or insurance company itself and the insured. *Precision Castparts* v. *Johnson & Higgins of Or.* (1980) 44 Ore.App. 739 [607 P.2d 763], imposed liability against an insurance agent who had been retained by plaintiff to procure adequate workers' compensation insurance; *Pellerin* v. *Cashway Pharmacy of Franklin* (La.App. 1981) 396 So.2d 371, and *MFA Mut. Ins. Co.* v. *Flint* (Tenn. 1978) 574 S.W.2d 718, both predicated the insurer's liability on traditional notions of violation of the covenant of good faith and fair dealing.

Accepting that a fiduciary does have a duty to disclose material facts (see, e.g., *Black* v. *Shearson, Hammill & Co.* (1968) 266 Cal.App.2d 362, 367

[72 Cal.Rptr. 157]), in most commercial settings, such as insurance sales, the competitive pressures of the marketplace militate against any concealment of the development and availability of new, different, or enhanced types of coverage. It is inferable from plaintiffs' complaint in the instant case that these competitive pressures are not working with respect to "underinsured motorist" coverage as the industry is presumably not overly anxious to solicit coverage which has the potential of vastly increasing the insurance company's exposure without necessarily encompassing a corresponding increase in their premium revenues. It is certainly clear that the public policy of the state, as articulated by the Legislature in section 11580.26, does not at this time encompass mandatory "underinsured motorist" coverage, notwithstanding an increase in the frequency of judgments exceeding the minimum liability requirements imposed by statute.[3] The Legislature's recent amendment of section 11580.2 to require underinsured motorist coverage cannot have the effect of imposing such a duty on defendant until such time as amended section 11580.2 becomes a part of the public policy of the state, and then the duty will be imposed as a statutory one and not an implied fiduciary duty.

Moreover, as argued by defendants herein, there are strong policy considerations which weigh against imposition of any liability on defendant for failing to provide plaintiffs with "underinsured motorist" coverage or advising them of the availability of this coverage from other carriers in the industry. If defendant in the instant case were found liable to plaintiffs for failure to make this coverage available, whether directly or by referring plaintiffs to its competitors, the express and limited public policy of the state as established by the Legislature on the date defendant issued its policy of insurance to plaintiffs would be expanded by the judiciary. In addition, we believe negative consequences to the insurance industry would necessarily follow. The obvious extension of the rule advocated by plaintiffs herein would subject insurance carriers to liability for failing to advise their own insureds of an arguably better package of insurance offered by a competitor. Notwithstanding the obvious adverse effect on the stockholders of private insurers, such a rule would transform the competitive-sales insurance industry into something more closely resembling an industry dedicated solely to the public good. Moreover, it would remove any burden from the insured to take care of his own financial needs and expectations in entering the marketplace and choosing from among the competitive products available. It would render insurance companies, again *not* brokers retained by the insured, into personal financial counselors or guardians of the insured,

---

[3] By amendment of section 11580.2, effective January 1, 1985 (Stats. 1984, ch. 1361, § 1), insurers will be required to offer underinsured motorist coverage with limits at least equal to the limits of liability for the insured's uninsured motorist coverage in all policies issued or renewed on or after July 1, 1985.

a result we believe goes well beyond anything required by law or dictated by common sense.

This rationale applies equally, if not more so, to plaintiffs' argument that defendant breached its fiduciary duty in failing to admonish plaintiffs that their $3,000 medical pay limits, which had been in effect since 1959, had become inadequate. If plaintiffs were that heedless of changing economic conditions, there is nothing in their relationship with defendant which would entitle them to shift the burden of their own negligence to defendant.

With respect to the propriety of considering economic practicalities in evaluating the relationship between an insurer and an insured, the Supreme Court pointed out in *Farmers Ins. Exchange* v. *Cocking, supra,* 29 Cal.3d at page 390: "The Legislature reasonably may have concluded that the benefits *to the public* from automatically including 'family member' coverage in all automobile liability policies were outweighed by the probable adverse consequences of such a rule. It is not unreasonable to suppose that substantial increases in premiums would be forthcoming if such coverage were declared mandatory. It may well have been a legislative concern that an increase in the costs of liability insurance might result in an appreciable increase in the number of uninsured drivers to the ultimate detriment of the general public. In addition, family members are frequently protected by the medical coverage provisions of the insured's policy, or by other medical or casualty insurance, thereby diluting the necessity for liability coverage. The Legislature may have deemed it unwise to require an insured to purchase expensive *liability* insurance in order to protect himself or another insured from potential injuries." (See also *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 872-873 [110 Cal.Rptr. 511].)

Therefore, we conclude that defendant did not, as a matter of law, owe a fiduciary duty to plaintiffs to (1) make available to them a particular kind of insurance, (2) advise them of the availability of such coverage elsewhere in the industry, or (3) advise them of inadequacies in coverage of which plaintiffs should, as reasonable persons, have themselves been aware. Therefore, the trial court properly dismissed plaintiffs' complaint for failure to state a cause of action.

Finally, with respect to plaintiffs' argument, that defendant is liable to plaintiffs in tort for actual and constructive fraud, there are no factual allegations in the complaint which would sustain this argument, nor did plaintiffs attempt to predicate any liability on this theory in their complaint. Thus, this argument is totally beyond the record before this court and cannot be considered. Again, it is significant that plaintiffs do not appeal from an order of the trial court sustaining defendant's demurrer without leave to amend;

plaintiffs were granted 30 days' time within which to amend their complaint and still did not attempt to state a cause of action based on actual or constructive fraud, nor did plaintiffs amend their complaint to include any factual allegations on which such a cause of action could rest. Notwithstanding the trial court's dismissal of their complaint for failure to amend within the time provided, the proposed amendment is a part of the record, and even this proposed amendment adds nothing to plaintiffs' original complaint.

The judgment is affirmed.

Woolpert, Acting P. J., and Hardin, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 21, 1985.

*Assigned by the Chairperson of the Judicial Council.