[No. B016361. Second Dist., Div. One. Nov. 26, 1986.]

*SHULTZ STEEL COMPANY, Plaintiff and Appellant, v.
HARTFORD ACCIDENT AND IDEMNITY COMPANY,
Defendant and Respondent.

*Reporter's Note: This case was previously entitled "Shultz Steel Company v. Rowan-Wilson, Inc."

## COUNSEL

Donnelly, Clark, Chase & Smiland and William M. Smiland for Plaintiff and Appellant.

Hawkins, Schnabel & Lindahl and Kelley K. Beck for Defendant and Respondent.

## OPINION

**RUIZ, J.**[*]—Plaintiff and appellant Shultz Steel Company (hereinafter Shultz) appeals from an entry of a summary judgment against it and in favor of defendant and respondent Hartford Accident and Indemnity Company (hereinafter Hartford), wherein the trial judge found "no triable issue of any material fact raised with respect to the issue of whether a relevant duty is owed by Hartford Accident and Indemnity Company, . . ." Judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

Shultz has a factory located in Los Angeles County where it manufactures certain steel products on its premises. These premises include several structures.

Hartford is an insurance company that writes multiple lines of insurance. Rowan-Wilson, Inc. (hereinafter Rowan) is a company engaged as insurance brokers and agents. From 1970 through 1985, Rowan had utilized approximately 100 different insurers to cover risks for its clients. Rowan has been

---

*[*Assigned by the Chairperson of the Judicial Council.]

an authorized agent of Hartford since 1895, and about 25 to 30 percent of Rowan's business was conducted on behalf of Hartford.

Shultz had purchased its liability insurance coverage through Rowan since 1957, and Rowan had placed much of Shultz's liability insurance with Hartford since that date. Hartford also provided Shultz with other lines of insurance, such as workers' compensation coverage, fidelity bonds and other types of coverage.

In December 1980, an electrical contracting firm had its employee, Steven J. Mascaro (hereinafter Mascaro), on Shultz's premises cleaning a volt switch at which time the employee was electrocuted and severely injured thereby. Within one year of this injury, Mascaro filed a civil action against Shultz and others for his injuries. Mascaro subsequently dismissed the action as against the other defendants and proceeded to trial in 1986 against Shultz obtaining a judgment against Shultz in excess of $5 million.

In 1982, Shultz filed a complaint against his own insurer, Hartford, and his own broker, Rowan, for negligence and to indemnify Shultz against any uninsured loss it might suffer should Mascaro prevail against Shultz.

In 1985, Hartford alone moved for and was granted a summary judgment. Rowan did not move for a summary judgment.

## CONTENTIONS

1. Is an insurance carrier (Hartford) vicariously liable under the general agency principles for the alleged negligence of its agent (who is also an independent insurance broker) for the agent's failure to recommend increased liability insurance coverage? We answer in the negative.

2. Is there a material fact dispute that could cause Hartford to be liable to Shultz on the theory that Hartford ratified the agent's negligence? We answer in the negative.

3. Independent of the insurance contract, is there a material fact dispute whether Hartford is liable to Shultz on a special duty theory for failure to recommend an increase in liability insurance coverage? We answer in the negative.

## DISCUSSION

### A. *Summary Judgment*

Code of Civil Procedure section 437c, subdivision (c) (hereinafter § 437c, subd. (c)) indicates that a summary judgment "shall be granted if all the

papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Hartford is the defendant. ■ "When the moving party is the defendant the latter must conclusively negate a necessary element of the plaintiff's case and demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial." (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 339 [138 Cal.Rptr. 670].)

■ · "The motion for summary judgment assumes the sufficiency of the pleadings, and calls for evidentiary affidavits to show whether there is any substantial proof to support the allegations." (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 280, p. 580.)

Section 437c, subdivision (b) indicates "[t]he motion shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken."

Section 437c, subdivision (c) further indicates that the court "shall consider all of the evidence set forth in the papers, . . . and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences . . . if contradicted by other inferences . . . ."

B. *Hartford's Vicarious Liability*

There is no dispute that Rowan is an insurance agent for Hartford for the purpose of selling its insurance policies. There is also no dispute that Rowan, as a duly authorized agent for Hartford, sold Shultz a $500,000 liability insurance policy. It will be assumed for the purposes of this appeal that Rowan imprudently advised Shultz regarding the amount of liability insurance coverage it should carry at all times. ■ Thus, the main issue becomes whether Hartford thereby became vicariously liable to Shultz for the carelessness of Rowan under the doctrine of respondeat superior.

■ "'An agent is one who represents another, called the principal, in dealings with third persons,'" (1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 2, p. 645.) and the principal is liable for the torts of the agent under the doctrine of respondeat superior. However, for this liability to be imposed on the innocent principal, the agent's tort must have been committed during the course and scope of his employment. (*Id.,* at § 155, p. 754.)

■ A principal may be liable for the torts of his agent if the principal directed or authorized him to perform the tortious act. (*Id.*, at § 153, p. 753.)

■ The principal may become liable for an act he did not originally authorize, if the principal ratifies the act. (*Id.*, at § 154, p. 754.) In *Weber v. Leuschner* (1966) 240 Cal.App.2d 829, 838 [50 Cal.Rptr. 86], the principal learned of the agent's fraud and affirmed it, and thus made it his own.

In regard to vicarious liability of an insurer for the negligence of its agent/broker, two lines of cases have developed. ■ However, before discussing these cases, it should be noted that *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 816-817 [180 Cal.Rptr. 628, 640 P.2d 764], provides that an insurance broker who negligently represents an insured with respect to obtaining the correct amount of coverage can be liable to the insured for loss suffered by the insured due to this negligence. ■ In *Pisciotta*, our Supreme Court affirmed a jury verdict against an insurance broker who had been engaged by the insured and who negligently obtained a replacement policy in a face amount $200,000 lower than that required by the insured's "excess coverage" carrier, thereby exposing the insured to a gap in his insurance protection. This case deals with a *broker,* not an insurer or insurance company, and is thus not applicable to this case.

■ It appears that the relationship between insurer and insured is a fiduciary relationship (*Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 445 [208 Cal.Rptr. 511]), wherein the insurer is duty bound to conduct itself with the utmost good faith for the benefit of the insured. (*Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369, 382.) ■ However, it must still be determined just how far the protection of this fiduciary relationship should be extended. (*Gibson, supra,* at p. 446.)

*The first line of cases* pertain to those situations wherein the fiduciary duty of the insurer was coextensive with the four corners of the contract of insurance entered into by the insurer and its insured. In *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [169 Cal.Rptr. 691, 620 P.2d 141], the court focused on the right of the insured to obtain the benefits of his insurance contract.

In *Bank of Anderson* v. *Home Ins. Co.* (1910) 14 Cal.App. 208, 213 [111 P. 507], a business loan occurred, and a fire insurance policy was issued by the insurer's agent to the borrower and made payable to the lender. The policy stipulated that it would be void should the insured obtain a second policy, and it further provided that the insurer's agent could not waive the insurer's rights under the first policy clause except by proper endorsement

of the policy. After the first policy was issued, the borrower informed the agent that it had taken out a second policy, and the agent told the insured that he would endorse the first policy and thereby waive the benefits under the second policy clause. Subsequently, the premises in question burned down. The insurer refused to pay on the first policy because it had not waived the second policy clause. The court held that the insurance carrier was liable, saying "Strictly speaking, this is probably not a waiver of the said conditions, but a case of equitable estoppel." The court also mentioned the theory of ostensible authority conferred on the agent. (At pp. 216, 214.)

In *Frasch* v. *London & Lancashire F. Ins. Co.* (1931) 213 Cal. 219 [2 P.2d 147], the insured paid the required premium for the fire insurance policy to the insurer's agent, but the agent absconded with the funds. A fire occurred and the insured made a claim under this policy, but the insurer denied the claim because of nonreceipt of the premium. Upon suit by the insured the court held that the insurer was bound by the conduct of its agent on the theory of ostensible agency. (P. 223.)

In *Cronin* v. *Coyle* (1935) 6 Cal.App.2d 205 [44 P.2d 385], an agent issued an insurance policy to a taxicab company, which policy provided for cancellation if the insured took out a second policy. The agent then filed the policy with the appropriate board regulating cab companies. Subsequent to all this, the agent learned that this policy had been issued without authority from the insurer. Then the agent, who also represented a second carrier, obtained a second policy issued by this other insurer. But since the second carrier had not yet been approved by the board, the agent purported to keep the first policy in effect. While both policies were in effect, a passenger riding in the insured's cab was injured. Then the second carrier was board approved and the first policy was cancelled. The passenger sued the insurer under the first policy. The court held that the insurer was liable for the acts of its agent, including the initial issuance without authority, and the subsequent waiver of cancellation in connection with the issuance of the second policy. This case addresses both the theory of ratification and that of ostensible authority.

In *Lippert* v. *Bailey* (1966) 241 Cal.App.2d 376 [50 Cal.Rptr. 478], an insurance agent issued a fire insurance policy on an apartment building, but the agent negligently omitted two of the four owners as insureds. Also, while $15,000 personal property coverage had been bargained for, the agent obtained only $5,000 coverage. A fire occurred. The owners of the building sued the carrier and its agent. Prior to trial, the insurer settled, and the trial proceeded against the agent alone. The appellate court noted that the neg-

ligence of the agent was attributable to the insurer and that a legal remedy could have properly been pursued against the insurer.

In *Jackson* v. *Aetna Life & Casualty Co.* (1979) 93 Cal.App.3d 838 [155 Cal.Rptr. 905], in a lease of commercial property, the lessee agreed to obtain insurance on the property with the lessor as an additional insured. The lessee obtained an insurance policy through the insurer's duly appointed agent. The agent examined the lease and should have named the lessor as an additional insured, but failed to do so. An injury occurred on this property and this injured person sued the lessor, who cross-complained against the insurer for negligent failure to provide insurance. The appellate court held that where an insurance agent negligently excludes or omits coverage, the intended beneficiary may state a cause of action against the insurer. The court indicated that an insurance company is "quasi-public" in nature, and held the insurer vicariously liable for its agent's negligence.

"Ostensible authority includes (a) the authority given by law to the agent, except where the third party has actual or constructive notice of restrictions; and (b) such authority as the *principal*, either intentionally or by want of ordinary care, causes or allows a *third person* to believe the agent to possess. (C.C. 2317, 2318.) █ And the principal is liable to persons who have in good faith, and without want of ordinary care, relied upon the agent's ostensible authority to their detriment." (1 Witkin, Summary of Cal. Law, *supra*, § 133, p. 738, italics in original.)

█ The above cases deal with situations where an insurer was held liable for the agent's ostensible, if not actual, authority in connection with an expressed agreement or representation. One case deals with an agent's alleged negligence in requesting the insurer issue a policy providing the coverages agreed upon with the insured. None of these cases deal with whether an insurer is liable for the alleged negligence of it's agent/broker in not recommending the appropriate liability coverage.

*A second type of situation* is where the insurer's breach of fiduciary duty, if any, did not arise under the insurance contract but outside it. (*Gibson* v. *Government Employees Ins. Co., supra,* 162 Cal.App.3d 441, 447.) In this situation, while the agent may be liable to the insured, the insurer is not liable to the insured. In *Gibson,* for approximately the last 20 years prior to the accident, Mr. and Mrs. Gibson had regularly renewed their automobile insurance policy from GEICO and it was in effect on the date of the accident. The policy met the minimum coverage limits and other requirements mandated in the Insurance Code. It featured uninsured motorist coverage, as required, but not underinsured motorist coverage, which was not required

by law. The policy also included medical coverage with a limit of $3,000. Mr. Gibson was struck by a car as he and his wife were crossing the street. The driver was insured, but his policy limits were inadequate to fully compensate the Gibsons. The Gibsons sued GEICO, their own insurance company, alleging the company had a duty to advise them of the availability and potential need of underinsured motorist coverage, and the inadequacy of their $3,000 limit on medical payment coverage. The Gibsons appealed from a dismissal upon the sustaining of GEICO's demurrer, and the appellate court affirmed. The court noted "absent some conduct on the part of the insurer consistent with assuming broader duties, the insurer's fiduciary duties are *limited to those arising out of the insurance contract* and do not encompass the duties asserted" either to advise the insured of "(1) the availability of coverage in addition to that requested [or] (2) the inadequacy of their policy limits." (*Id.*, at p. 443, italics added.)

The *Gibson* court reasoned that any possible duty on the part of the insurer to advise the insured could not be based on the covenant of good faith and fair dealing because the covenant "[extends] only to the limits of the insurance coverage afforded by the insurer to the insured, i.e., . . . of insurance entered into between it and its insured." (*Id.*, at p. 446.) *Gibson* noted the absence of any allegation that the insurer had contracted to provide, or advertised that it would provide, such advice, and therefore the court held that there were no facts extrinsic to the insurance contract upon which such duty could be based. The court rejected the insured's claimed reliance on the insurer's expertise as the basis for such a duty. (*Id.*, at p. 448.)

*Gibson* also concluded that the duties plaintiffs sought to impose on the insurer could not be based upon the principles of strict fiduciary responsibility because such duties do not apply to conduct extrinsic to the insurance contract. (*Id.*, at pp. 449-450.)

*Gibson* points out strong public policy considerations weighed against imposition upon the insurer of the duties suggested by the plaintiffs (of the availability of coverage beyond what was requested and advice regarding the inadequacy of policy limits). If such were the rule, insurance companies might have to refer plaintiffs to their competitors who may have a better insurance package available. Insurance companies would cease to be competitive in their sales and would be transformed into an industry dedicated solely to the public good. Under such a rule, insurance seekers would lose their incentive to shop for better prices. Also, insurance companies (not to be confused with brokers) would be transformed into personal financial counselors for the insured. (*Id.*, at p. 451.)

*Gibson* also indicates that insureds must remain vigilant regarding changing economic conditions. They must be aware of their own increased insurance coverage needs. Insureds cannot shift their own negligence to insurers. (*Id.*, at p. 452.)

It would seem that the *Gibson* case closely resembles the case at bar. Thus, applying the reasoning and holding of *Gibson,* this court rules that Hartford owed no duty to advise Shultz as to the adequacy of its liability coverage limits. Here, as in *Gibson,* there was no allegation or evidence of representations made by Hartford to either Shultz or Rowan that Hartford would advise Shultz as to the appropriate liability coverage limits for Shultz's needs. On the contrary, both Shultz and Dodd Young testified that no such representations had been made by Hartford. A declaration of Ms. Burns also showed Hartford made no such statements.

In short, as a matter of law, there is no triable issue as to whether Hartford owed a duty of advice to Shultz.

It should be noted that the California Supreme Court denied a petition for hearing on *Gibson* on February 21, 1985.

C. *Did Hartford Ratify Rowan's Alleged Negligence*

"An agency may be created, and an authority may be conferred, by a . . . subsequent ratification." (Civ. Code, § 2307.) "A ratification can be made . . . by accepting or retaining the benefit of the act, with notice thereof." (Civ. Code, § 2310.) "Ratification of part of an indivisible transaction is a ratification of the whole." (Civ. Code, § 2311.) "A principal is responsible for . . . wrongs committed by his agent [if] . . . he has . . . ratified them, . . ." (Civ. Code, § 2339.)

In the case of *Insurance Co.* v. *McCain* (1878) 96 U.S. 84 [24 L.Ed. 653], the agent accepted a renewal premium on a life insurance policy although he lacked authority to do so. Nevertheless, the agent sent the insurance company a statement showing the premium credited to the insurer's account. More than one month later the insured died. At no time between the date of receipt of the statement and the date of the insured's death did the insurer repudiate the agent's authority. But it refused to pay a claim on the basis of the agent's lack of authority. The beneficiary sued and won, and the United States Supreme Court affirmed, holding that the insurer's silence ratified the agent's wrongful act.

Thus, a principal may become liable for an act he did not originally authorize, if the principal ratifies the act. (1 Witkin, Summary of Cal. Law, *supra*, § 154, p. 754.)

 Shultz alleges that Hartford possessed full knowledge that Rowan had caused Shultz to carry woefully inadequate insurance, that Hartford was aware of the safety conditions at Shultz's plant, including risks of electrocution, that Hartford better than anyone knew of the potential for a high jury verdict, and that Rowan advised Shultz on insurance coverage matters. From this, Shultz argues that Hartford ratified Rowan's negligence by accepting the insurance premiums paid by Shultz.

However, while Hartford was aware of Shultz's $500,000 policy, a declaration by a Hartford employee (Ms. Burns) indicated that Hartford had no way of knowing whether Shultz had an umbrella or excess coverage with another insurer. Also, there is nothing in the record to show that Hartford knew the $500,000 limits were inadequate or that Shultz had not rejected suggestions to increase its coverage limits.

In short, there is no triable issue raised by Shultz regarding Hartford's ratification. Hartford's receipt and retention of Shultz's premium is not ratification of Rowan's wrongdoing—Hartford provided a service for the premium—it gave liability coverage up to $500,000.

D. *Extrinsic to the Insurance Contract:*

 The final issue is whether independent of the insurance contract, can it be said that Hartford is liable to Shultz, on a special duty theory, for failure to recommend an increase in liability insurance coverage. In other words, apart from the theories of vicarious liability and ratification, can it be said that Hartford owed Shultz a direct duty to recommend it increase its policy limits.

Shultz alleges that Hartford was periodically responsible for providing renewal quotations and making requested coverage changes for Shultz's general liability policy. Also, that each year Hartford sent an auditor to measure sales, payroll and square footage. That on one occasion Hartford recommended continuance of coverage. Hartford also made safety checks on the Shultz premises and made safety recommendations. On one occasion, Hartford recommended that the limits be increased on property damage (not liability). Also, that Hartford advised Shultz regarding types of property insurance and fidelity bonds and recommended increasing a fidelity bond.

However, no document or testimony was offered to contradict the statements of either Young or Burns that Hartford did not make liability limits recommendations. There was no indication that the audits or loss control inspections had anything to do with liability coverage recommendations,

but rather they dealt with plant safety matters. It was the responsibility of Hartford to give premium quotations because that is its business. In order to determine the appropriate premiums to quote, Hartford had to check Shultz's sales, payroll and square footage. There is no indication that this type of payroll check was for the purpose of providing recommendations pertaining to liability.

In those situations where Hartford gave advice regarding other types of insurance coverage, the matter was discussed with Rowan, not with Shultz, and the advice dealt with property coverage, not general liability coverage limits recommendations. Thus, it appears that Shultz never received advice from Hartford relating to liability coverage limits recommendation. Also, documentary evidence indicates that Hartford did not make liability limits recommendations to any insured.

In short, there is no triable issue as to whether Hartford owed a special duty to Shultz extrinsic to the insurance contract.

CONCLUSION

The judgment granting Hartford Accident and Indemnity Company a summary judgment is affirmed.

Spencer, P. J., and Devich, J., concurred.