[No. A044539. First Dist., Div. Three. Mar. 3, 1989.]

MARIAM SOLTANI-RASTEGAR et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
FRANCESCO BRINZO, Real Party in Interest.

**COUNSEL**

Pelton & Gunther and Jon L. Brown for Petitioners.

No appearance for Respondent.

Carolyn B. Dethlefsen and Christopher Johns for Real Party in Interest.

**OPINION**

**STRANKMAN, J.**—Two defendants in a personal injury action challenge a court order requiring disclosure of statements they made to an insurance claims representative. They contend that these statements are covered by the attorney-client privilege because they were made in contemplation of litigation and were directed to an agent of their attorney. They discount the fact that when the statements were given litigation had not yet begun and no attorney had been assigned to handle the case. Applying the teachings of *Gene Compton's Corp.* v. *Superior Court* (1962) 205 Cal.App.2d 365 [23 Cal.Rptr. 250], and *Travelers Ins. Companies* v. *Superior Court* (1983) 143 Cal.App.3d 436 [191 Cal.Rptr. 871], we grant the requested relief.

These proceedings arise out of a two-car accident in San Francisco on April 19, 1987. Real party in interest was an occupant of a car driven by his grandson. Petitioner Mariam Soltani-Rastegar was the driver of a car owned by petitioner Paul Craib. Mr. Craib's car was insured by California State Automobile Association Inter-Insurance Bureau (CSAA). Within a

month of the accident, Mr. Craib spoke with a CSAA claims representative over the phone and in person. He made no report in writing. On August 24, 1987, Ms. Soltani-Rastegar gave a written statement to CSAA claims representative Jennifer Anderson, who had primary responsibility for adjusting any claim brought by real party.

On April 13, 1988, real party filed his action against Ms. Soltani-Rastegar, Mr. Craib, and others. During discovery, he learned about Ms. Soltani-Rastegar's written statement and that Ms. Anderson had taken notes about Mr. Craib's statements to her. Over petitioners' objections based upon the attorney-client privilege, the court ordered production of both Ms. Soltani-Rastegar's statement and Ms. Anderson's notes. The court concluded that petitioners had not "established the existence of an attorney-client relationship that would justify the assertion of such privilege" as to those items. This petition followed.

With certain exceptions not applicable here, a client "has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." (Evid. Code, § 954.) ▮ "The party claiming privilege carries the burden of showing that the evidence which it seeks to suppress is within the terms of the statute." (*D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700].)

In opposing the discovery request, petitioners submitted declarations explaining that their statements were made in confidence to CSAA agents "for the sole purpose of defending" them against claims brought by those involved in the accident. The declarations further asserted that on May 23, 1988, the statements were delivered along with the CSAA file to petitioners' present attorney, who has kept them since then.

▮ Real party in interest argued below that petitioners did not meet their burden of showing that the attorney-client relationship covered these communications because both statements were made long before the lawsuit was filed and before CSAA had retained an attorney to represent petitioners. He repeats that argument in this court, with some elaboration.

*Gene Compton's* and *Travelers* demonstrate the weakness of real party's argument. In *Gene Compton's,* the trial court ordered disclosure of statements made by employees who had witnessed plaintiff's fall on a stairway of the defendant's premises. The statements had been sent to the insurance company shortly after the accident and some eight or nine months before litigation was commenced and before an attorney was selected to represent the defendant. The *Gene Compton's* court reversed the disclosure ruling,

concluding that the transmission of privileged communications to the attorney through the agency of an insurance carrier did not destroy the privilege. (*Gene Compton's Corp.* v. *Superior Court, supra,* 205 Cal.App.2d at p. 379.)

*D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d at pages 730-731, cast doubt upon the *Gene Compton's* decision when it disapproved *Gene Compton's* failure to distinguish properly questions of law from questions of fact. But *Travelers* has completely rehabilitated much of the *Gene Compton's* opinion, including the part that applies here. As explained by *Travelers,* "*Chadbourne* . . . left intact *Gene Compton's* approval of the holding in *Heffron* [*Heffron* v. *Los Angeles Transit Lines* (1959) 170 Cal.App.2d 709 (339 P.2d 567, 74 A.L.R.2d 526)] that 'confidential reports of an accident procured for the use of an insurance company's attorney were protected by the attorney-client privilege.' [Citation.] [¶] Finally, *Chadbourne* left intact *Gene Compton's* approval of the 'prevailing rule' that ' " '[a]ccording to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him.' [Citations.]" ' [Citation.]" (*Travelers Ins. Companies* v. *Superior Court, supra,* 143 Cal.App.3d at pp. 451-452.)

Real party contends that the "dominant purpose" test should be applied to the communications and that the dominant purpose of these communications to the claims agent was to settle the claim, not to assist the as-yet-undesignated attorney. But application of the "dominant purpose" test, as explained in *Holm* v. *Superior Court* (1954) 42 Cal.2d 500 [267 P.2d 1025], does not lead to real party's conclusion. *Holm* suggested that there would be no privilege "in a communication which is not made to or for further communication to an attorney, although the communication might have some connection with possible liability in the future, such as reports submitted in the regular course of business for study in accident prevention." (*Id.,* at p. 507.) The "dominant purpose" of such a communication would be accident prevention, not preparation for litigation.

But *Holm* itself found the privilege applicable to reports and photographs originated with agents of the defendant and forwarded in confidence to the defendants' attorneys for use in "possible litigation." (*Holm* v. *Superior Court, supra,* 42 Cal.2d at p. 508.) In *Holm,* as here, the documents were created when there was only a "threat of litigation." The *Holm* court explained that "there is no valid basis for a distinction between a communication created for transmittal to an attorney to prepare for threatened

litigation following particular accidents, and a communication prepared for an identical purpose under standing rules in the case of all accidents involving person or property injury. Because the scope of the operations of the defendant city's municipal railway is such as to require communications of this nature as a routine matter, it cannot be said that the attorney-client privilege did not attach." (*Id.*, at pp. 508-509.)

It follows from *Holm* that the statements given to CSAA after the accident here, "for the sole purpose of defending" against claims, are protected by the attorney-client privilege. The fact that litigation was only a threat on the horizon and that attorneys had not yet been selected to try to avert or meet that threat does not convert the purpose of the transmission. To hold otherwise might merely encourage insurance companies to bring in their attorneys at early stages in the claims handling and might discourage early settlement of claims.

Real party speculates that perhaps the privilege here was waived because the statements passed through too many insurance company hands on the way to the attorneys. But they cite no evidence of this, and they present no authority to support the view that a privilege is waived when more than one agent of the attorney or of the party handles the communication. We reject this waiver argument.

We also decline real party's suggestion that we deny the petition on procedural grounds. Real party contends that the record presented to this court is inadequate (*Sherwood* v. *Superior Court* (1979) 24 Cal.3d 183, 186-187 [154 Cal.Rptr. 917, 593 P.2d 862]), and that the verification of the petition is fatally defective because it was signed by petitioner's attorney and because it was verified on information and belief. We disagree. All documents necessary to evaluation of the court's order have been provided. And while petitioner's counsel should have explained why he, and not his client, verified the petition (Code Civ. Proc., § 446), the defect is one of form which does not affect the substance of the petition. The facts which justify our granting of the petition are all documented in the exhibits to the petition.

Furthermore, the verification is not merely upon information and belief. Conforming with the directions from Code of Civil Procedure section 446, declarant states that the petition is "true and correct" of his own knowledge except as to those matters stated on information and belief and that declarant believes those matters to be true and correct. (Contrast *Star Motor Imports, Inc.* v. *Superior Court* (1979) 88 Cal.App.3d 201, 203 [151 Cal.Rptr. 721], where all the allegations were verified " 'under penalty of perjury, upon information and belief, . . .' " (italics omitted).) But nothing

in the petition is stated on "information and belief." Thus, that part of the verification is mere surplusage, and the asserted facts are all stated to be true and correct of the declarant's own knowledge.

We issue a peremptory writ of mandate in the first instance. Such a procedure is proper, as we have advised real party in interest that we might so act. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing the Superior Court of the City and County of San Francisco to vacate its order requiring disclosure and to enter a new order denying real party's request. In response to real party's repeated urgings that we act quickly, and pursuant to rule 24(d), California Rules of Court, this decision is made final forthwith in this court. Upon the finality of this decision, the stay of trial issued December 29, 1988, will dissolve.

White, P. J., and Merrill, J., concurred.