[No. D009941. Fourth Dist., Div. One. Dec. 21, 1989.]

STATE FARM FIRE AND CASUALTY COMPANY, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; ROBERT A. DURANT et al., Real Parties in Interest.

**COUNSEL**

Spray, Gould & Bowers, Robert M. Dean and James S. Link for Petitioner.

No appearance for Respondent.

Dwight D. Worden and Steven W. Murray for Real Parties in Interest.

Archer, McComas & Lageson, H. Paul Breslin and Robert L. Sallander, Jr., as Amici Curiae on behalf of Real Parties in Interest.

**OPINION**

**FROEHLICH, J.**—Petitioner State Farm Fire and Casualty Company (State Farm) petitions for a writ reversing the discovery order of the superior court, contending that such order violates the attorney-client privilege.

The action in which the discovery order was made is an "insurance bad faith" case brought against State Farm by Robert and Diane Durant (the Durants). State Farm had issued a homeowners' liability policy to the Durants. The Durants were subsequently sued by purchasers of their home who claimed damages for foundation defects. Durants tendered the defense of the case to State Farm, which accepted same but with a "reservation of rights." It then asserted this reservation in an action for declaratory relief filed against Durants, in which it contended it had no obligation of indemnification. The underlying "bad faith" case is the Durants' claim that State Farm committed torts and breaches of contract in denying coverage and in failing adequately to defend.

When State Farm interposed its "reservation of rights" it became obligated under the *Cumis* doctrine[1] to provide independent counsel to the Durants in the defense of their liability action. This obligation was satisfied by State Farm's agreeing to pay the fees of independent counsel, Dwight D. Worden, previously retained by the Durants. State Farm then retained other counsel, Haasis, Pope and Correll, to pursue its declaratory relief action to establish lack of coverage.

State Farm assigned as adjuster for the case its employee Ted Krempa (Krempa). Krempa communicated with the Worden office concerning the case, and was the only agent of the insurance company with whom Worden dealt. However, that Krempa represented State Farm's position on liability was evidenced by the fact that he "continuously advised . . . that not one penny would be offered in settlement, that State Farm was only obligated to provide . . . a 'defense,' because, in his opinion, there was no coverage under the policy." (Quoted from the Worden memorandum of points and authorities submitted in superior court.)

Krempa was also the State Farm agent who communicated with Haasis, Pope and Correll, the coverage counsel. He therefore served in a dual capacity, assisting and communicating with counsel defending Durants in the liability case, and at the same time communicating with and assisting the State Farm counsel asserting lack of coverage in the declaratory relief case. Krempa maintained only one file.

---

[1] *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]. When the insurer disputes liability for indemnification but continues to provide a defense for the insured against the claim, a potential conflict of interest arises. Assertions made to defeat the liability of the insurer under the policy may promote the claim of the third party against the insured. To remedy the conflict, *Cumis* held that the insurer is obligated to provide separate counsel for the insured in representation of the liability case, independent of the counsel utilized by the insurer in its coverage case.

The writ petition derives from a discovery order made in the "bad faith" case. Durants sought production of all of the documents in Krempa's file.[2] Their contention, broadly put, is that the adjuster aiding in defense of the liability action is the agent of the insured and the insured's *Cumis* counsel, that the Durants and their counsel are entitled to know everything their agent learns, and that they are hence privileged to see everything in his file. Since Krempa was Durants' agent, it is argued, the sending of information or communications to him by Haasis, Pope and Correll constituted a waiver of any attorney-client privilege which might otherwise be available, just as if the communication had been sent directly to the Durants.

The *Cumis* rule requires complete independence of counsel when an insurance company interposes a reservation of rights, the basis of which creates a conflict of interest.[3] Durants request that we add a layer of separation to this mandate, requiring that not only the counsel involved in the cases but the adjusters assigned to each case (the "liability" case as distinguished from the "coverage" case) be separate—that the files on each case be separate and apart—and indeed, as urged by amici curiae, that a veritable wall be erected between the insurance company's administration of the two cases. We cannot subscribe to this proposition.

The relationship between an insurer and an insured is akin to a fiduciary relationship. The insurer is bound to conduct itself with the utmost good faith for the benefit of its insured. (*Shultz Steel Co.* v. *Hartford Accident & Indemnity Co.* (1986) 187 Cal.App.3d 513, 519 [231 Cal.Rptr. 715]; *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441,

---

[2] Illustrative of the broad nature of the request is the following item: "The complete adjuster's or administrators' or investigator's file(s) regarding all matters involving STATE FARM as it exists in the [*sic*] any and all offices of the Defendant, or in the personal possession of any Defendant or employees, agents, or persons having contracted with each Defendant, including, without limitation, HAASIS, POPE & CORRELL, pertaining to the aforementioned policy or policies of insurance. . . ."

[3] *Cumis* can be read to suggest that this conflict arises *whenever* the insurer asserts a reservation of its right to assert noncoverage, while still providing a defense to the liability action. (See *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc., supra*, 162 Cal.App.3d at pp. 361, 371, fn. 7.) This interpretation of *Cumis* would be erroneous, as pointed out in *McGee* v. *Superior Court* (1985) 176 Cal.App.3d 221, 227 [221 Cal.Rptr. 421]. It is only when the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise. The briefing in this special proceeding is insufficient to permit a determination whether such conflict was actually presented by State Farm's reservation of rights. However, the fact of acceptance and compensation of the insured's chosen counsel, thus constituting such counsel "*Cumis*" counsel, is a sufficient acknowledgement by the parties that the requisite conflict was created. We thus proceed upon the assumption that this is indeed a case in which *Cumis* counsel was required.

444-446 [208 Cal.Rptr. 511].) However, the protection afforded by that relationship is not unlimited (*Shultz Steel Co.* v. *Hartford Accident & Indemnity Co., supra*, at p. 519), and the insurer has no duty totally to disregard its own interests when they conflict with the insured's interests (*Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 647 [39 Cal.Rptr. 731, 394 P.2d 571]; see also *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 873-874 [110 Cal.Rptr. 511]).

■   The insured both by contract and by statute has a duty to cooperate in his defense and to disclose information and facts concerning the action. (Ins. Code, § 332; *O'Morrow* v. *Borad* (1946) 27 Cal.2d 794, 800 [167 P.2d 483, 163 A.L.R. 894].) Where statements are given the insurance adjuster for the purpose of defending against the liability claims, they are protected from third party discovery by the attorney-client privilege (*Soltani-Rastegar* v. *Superior Court* (1989) 208 Cal.App.3d 424, 425 [256 Cal.Rptr. 255]). This does not constitute the adjuster the insured's agent for all purposes, however. The continuing potential adverse position of the adjuster is recognized, we believe, in recent legislation which affirms the principle stated in *Cumis*, that "privileged materials relevant to coverage disputes" need not be reported to the insurance company. (Civ. Code, § 2860, subd. (d) (eff. Jan. 1, 1988); *San Diego Credit Union* v. *Cumis Ins. Society, supra*, 162 Cal.App.3d at p. 366.)

■   The insurance adjuster is the agent of the insurer. (See *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 48 [260 Cal.Rptr. 183, 775 P.2d 508].) That the adjuster can under particular fact situations become also the agent of the insured is clear, and this most usually will occur when no issue as to coverage arises. Where coverage is in issue, however, it is obvious that the adjuster's loyalties are divided and the insured and his counsel cannot reasonably expect that he represents only the interest of the insured. Indeed, it is to remedy this problem that the concept of the *Cumis* counsel has been created.

The existence of independent *Cumis* counsel adequately protects, we believe, the interests of the insured. In these days of ever-increasing costs in the processing of insurance settlements, we conclude it would be unwise to impose yet another layer of administration.

We do not, it must be noted, deal with the potential issue of misrepresentation of the status of an insurance adjuster. This is not a case in which an adjuster has taken advantage of misplaced or mistaken confidences. The adverse position of Krempa in terms of the claims of Durants against State

Farm was clearly stated and, presumably, well understood by the Worden law office. As *Cumis* counsel, it was Worden's obligation to guard against improvident revelations to the insurance company, and since it dealt only with Krempa it must have assumed that communications to him were the same as communications to State Farm itself.

This is not a case of claim of damage by virtue of any occupation of dual role by Krempa. Durants do allege in their complaint that confidential information was transmitted to Krempa by Durants' counsel and that this information was used adversely to Durants. Nowhere, however, is any specific injury alleged to have resulted from this broadly alleged breach of privilege. It appears to us that the reason for alleging transmission of confidences to Krempa was to support the contention that Krempa served as the agent for Durants. The thrust of the discovery motion, which gives rise to this proceeding, was not to prevent Krempa from passing information to his company or their attorneys or to sanction him for breach of confidences; it was to obtain information in Krempa's files which he had obtained from the company's coverage counsel.

Durants claim that because Krempa was acting in their behalf, communications made to him by other insurance company counsel must be deemed infected with a waiver of privilege. Officers and adjusters of insurance companies have long, we believe, occupied roles of divided loyalty when liability under policies is denied. The principle espoused by Durants would require that counsel representing an insurance company make sure, before discussing coverage concerns, that the individual in the company with whom he was talking was not also involved otherwise in the investigation of the claim. We believe such a requirement would be unreasonable and impractical.

We find that the communications between coverage counsel, Haasis, Pope and Correll, and Krempa are privileged under Evidence Code section 954 and are not discoverable. To the extent the superior court compelled the discovery of such confidential communications the order is vacated. The court is directed to enter a new order denying the motion to compel discovery of the privileged material.

Kremer, P. J., concurred.

**NARES, J.,** Concurring.—I agree with the majority's conclusion that the requested documents are privileged. I write separately, however, because in my view, the majority has misperceived the Durants' contentions, and as a

result has developed a legal analysis different from the one I believe is warranted.

Contrary to the majority's understanding of the record, it seems clear the heart of the Durants' contention is Krempa received from *Cumis*[1] counsel, and then in turn transmitted to the insurer, privileged and confidential information detrimental to the Durants' position in the coverage dispute. For example, paragraph 9 of the Durants' complaint, which is incorporated by reference into their causes of action for breach of contract, breach of the implied covenant, intentional infliction of emotional distress, negligence, and breach of statutory duties states: " . . . Krempa was obtaining information, otherwise privileged, through the retention of *Cumis* counsel; the transmission of information so obtained, was made directly to State Farm for State Farm's use in the coverage dispute with Durant." Expressing a similar contention, the Durants' points and authorities filed in the trial court state: "Krempa . . . proceeded to disclose and transmit privileged, confidential, private and work product material received from Durants' *Cumis* counsel to State Farm's attorneys, who used said information adverse to Durant. In short, State Farm, Krempa and other employees commingled the Durant files without permission. *Durant asserts that such commingling and use of Krempa as a common adjuster is contrary to law and is a breach of State Farm's contractual and fiduciary responsibilities to Durant.*" (Italics added.)

In light of the above, I disagree with the majority's characterizing this case as one where there is no "specific injury alleged to have resulted from this broadly alleged breach of privilege." (Maj. opn., *ante,* at p. 1228.) Having incorporated paragraph 9 into each of their causes of action, the Durants have alleged such injury. I also disagree with the majority's assumption that "the reason for alleging transmission of confidences to Krempa was to support the contention that Krempa served as the agent for Durants." (*Ibid.*) Having alleged in paragraph 4 of their complaint that "each Defendant was the agent . . . of each of the other Defendants," the more plausible assumption is the Durants are aware that agency may be pleaded in a conclusory manner, and had that been their intention, they would have similarly pleaded Krempa's agency. In part because of this fundamental disagreement, I analyze the legal issues differently.

Although it is viscerally satisfying to immediately consider the wisdom and wide-ranging implications of requiring a *Cumis*-adjuster, the starting point is acknowledging that in deciding this case, State Farm's communica-

---

[1] *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].

tions with its coverage counsel are within the attorney-client privilege unless the communications were not intended to be confidential, an exception to the privilege exists, or the privilege has been waived.

"[A]n insurance company should be free to seek legal advice in cases where coverage is unclear without fearing that the communications necessary to obtain that advice will later become available to an insured who is dissatisfied with a decision to deny coverage. A contrary rule would have a chilling effect on an insurance company's decision to seek legal advice regarding close coverage questions, and would disserve the primary purpose of the attorney-client privilege. . . . [Citation omitted.]" (*State Farm Fire & Casualty Co.* v. *Superior Court* (1988) 206 Cal.App.3d 1428, 1432 [254 Cal.Rptr. 543].) Appropriately, the Durants do not contest this point, but instead urge on various legal theories that the privilege is inapplicable. More specifically, Durants contend Krempa, as the liability adjuster, was their agent "for purpose of the defense of the underlying tort case," and as a result (1) all of the Durants' communications with Krempa are privileged; and (2) Krempa must disclose his entire file, including otherwise privileged communications with coverage counsel. Alternatively, Durants contend State Farm's fiduciary duties and obligations arising under the implied covenant of good faith and fair dealing require it to disclose any information beneficial to their interests, including, of course, otherwise confidential communications with coverage counsel. As discussed below, in my view each of these contentions is without merit.

## AGENCY

Citing *Soltani-Rastegar* v. *Superior Court* (1989) 208 Cal.App.3d 424 [256 Cal.Rptr. 255], Durants contend Krempa was their agent, and as a result is required to disclose all relevant information to them, including his communications with coverage counsel.[2] Reading *Soltani* in this manner, however, takes the case out of its narrow context and attributes to it a proposition for which it does not stand.

The underlying action in *Soltani* was a personal injury case arising out of an automobile accident. The insured gave a statement to her insurance

---

[2] Although neither the Durants nor the majority opinion articulate the theory underlying this assertion, I assume the argument runs as follows: An agent must use "ordinary diligence to keep his principal informed of his acts in the course of the agency." (Civ. Code, § 2020.) An agent must make the "fullest disclosure of all material facts concerning the transaction in question that might affect the principal's decision." (*St. James Armenian Church of Los Angeles* v. *Kurkjian* (1975) 47 Cal.App.3d 547, 551 [121 Cal.Rptr. 214].) Accordingly, if Krempa is the Durants' agent, then any communications between Krempa and coverage counsel must be disclosed to the Durants and could not, therefore, have been intended to be confidential. As a result, the communications are not within the attorney-client privilege. This theory is different from waiver.

adjuster *before* an attorney was retained to defend her. *Soltani* held the plaintiff could not discover the statement because the adjuster was acting as the attorney's agent for purposes of conveying confidential information to be used in defending the claim.

Here, the Durants' *Cumis* counsel directly communicated with Krempa. On the most obvious level, therefore, *Soltani* is distinguishable because here it is the attorney, not the insured, who communicated with the insurance adjuster. It is difficult to understand how an attorney, such as the Durants' *Cumis* counsel, could communicate with Krempa for the purpose of transmitting confidential information to herself.

Thus, *Soltani* assists the Durants only if it is read so broadly to mean an insurance adjuster is the defense attorney's agent for *all* purposes, or at minimum for purposes of conveying the defense attorney's communications to the insurer where the insurer reserves its right to contest coverage and provides independent counsel.

As the majority opinion notes, Krempa was State Farm's employee and agent and State Farm has taken a coverage position adverse to its insured. In their points and authorities filed in the trial court, the Durants state, "Krempa continuously advised Durants' attorneys that not one penny would be offered in settlement, that State Farm was only obligated to provide Durant with a 'defense', because, in his opinion, there was no coverage under the policy."

In some circumstances, most notably for purposes of estopping an insured from asserting a statute of limitations defense where the adjuster has misled the claimant, courts have held an adjuster is the insured's agent. (See, e.g. *Cook* v. *Smith* (Tex.Ct.App. 1984) 673 S.W.2d 232, 235;[3] 16 Appleman, Insurance Law and Practice (1981) § 8646.) However, this certainly does not mean the adjuster is the insured's (or the insured's attorney's) agent for all purposes: "Ordinarily the insurer is not an agent of the insured merely because it performs acts beneficial to the insured. An indemnity insurer, by contracting to defend, and by defending, does not become an agent of the insured, but rather the relationship is that of an independent contractor." (*Mandola* v. *Mariotti* (Tex.Civ.App. 1977) 557 S.W.2d 350, 352.)[4] More specifically, in *Sanchez* v. *Galey* (1986) 112 Idaho 609 [733 P.2d

[3] "[A]n adjuster acting for an insurance company may be considered to be the agent of the insured so as to estop the insured from setting up a statute of limitations." (673 S.W.2d 232, 235.)

[4] "It has sometimes been stated in appellate court opinions that a liability insurer acts as an agent for the insured in defending or settling a claim on an insured's behalf. . . . [¶] The use

1234], the Idaho Supreme Court held an adjuster was not the insured's agent for purposes of imputing the adjuster's admission to the insured: "The interests of insurer and insured are often at odds during the course of litigation; particularly so before trial. . . . Conflicts of interest between insurer and insured, while not the norm, are nonetheless commonplace [citing *San Diego Fed. Credit Union* v. *Cumis Ins. Society* (1984) 162 Cal.App.3d 358]. . . [T]he interests of insurer and insured are discrete and . . . statements of employees of the insurer should not be viewed as statements made by an agent of the insured." (*Sanchez* v. *Galey, supra*, 733 P.2d at p. 1245.) Using similar reasoning—the conflicting interests between an insurer and its insured—in *Jackson* v. *Clark* (Tex.Civ.App. 1961) 351 S.W.2d 292, the court held the insurer's paying one of several claims was not admissible against the insured as an admission of an agent: "The insurance policy gave State Farm the authority to settle the claim with Jackson but to say the company, in making the settlement, was acting as the agent of Gibson and as the agent its act was that of the principal is not supported by the authorities." (*Id.* at p. 294.)

Where, as here, a conflict of interest requiring *Cumis* counsel has arisen, counsel's statements to Krempa—the *agent of her client's adversary*—are scarcely the type of communications that reasonably could have been considered confidential. If insurers must pay for independent counsel because of the assumption that insurance defense lawyers will not, as a practical matter, comply with ethical standards, certainly attorneys must start with the assumption that the adjuster, who is employed and paid by the insurer, and who is not subject to the attorney's ethical rules, has loyalties adverse to the insured. As noted by the majority, this concept is implicit in Civil Code section 2860, subdivision (d), which recognizes *Cumis* counsel is *not* to reveal "privileged materials relevant to coverage disputes."[5]

---

of the agency characterization is erroneous in this context, and any conclusions reasoned from the supposition of such a relationship should be carefully scrutinized. An insurer and its representatives are not agents of the insured even with respect to settlement of a claim against the insured or with respect to defense of that claim. . . ." (Keeton & Widiss, Insurance Law (1988) § 7.5(c), pp. 807-808.)

[5] The Durants' action was filed on April 7, 1988. Their return to State Farm's petition asserts section 2860, which became effective on January 1, 1988, does not apply because "its effective date was subsequent to the events giving rise to the litigation herein." Interestingly, however, the Durants' points and authorities filed in the trial court relied on Civil Code section 2860, subdivision (d), for the proposition their communications with Krempa were privileged.

State Farm does not address whether Civil Code section 2860 applies to this case. I would similarly decline to reach this issue either because of the Durants' inconsistent positions taken at the trial court and here, or because existing case law and ethical obligations required the Durants' attorney to communicate with State Farm generally in the manner now required under Civil Code, section 2860, subdivision (d). (See *California Casualty Gen. Ins. Co.* v. *Su-*

Agency rests on the consent of the parties. (*Naify* v. *Pacific Indemnity Co.* (1938) 11 Cal.2d 5, 12 [76 P.2d 663, 115 A.L.R. 476].) Even once established, agency may be terminated by the agent's renunciation, "as by his acceptance of an inconsistent employment." (3 Cal.Jur.3d, Agency, § 22, p. 35.) In my view, the different holdings in cases where the adjuster has been held to be the insured's agent (the estoppel cases) and those where he has not (the admission cases) may be reconciled by these principles. The adjuster's agency relationship with the insured does not extend to those subjects for which there is a conflict of interest. (*Sanchez* v. *Galey, supra*, 733 P.2d at p. 1245.) Accordingly, I agree with the majority's implicit conclusion that under the circumstances of this case, Krempa was not acting as the insured's agent when he received communications from the Durants' independent counsel relevant to the coverage dispute. Accordingly, nothing in Krempa's relationship with the Durants would render Krempa's communications to coverage counsel not confidential.

### FIDUCIARY DUTIES

Citing *Frommoethelydo* v. *Fire Ins. Exchange* (1986) 42 Cal.3d 208 [228 Cal.Rptr. 160, 721 P.2d 41], Durants contend State Farm is their fiduciary, and as such, cannot employ a single adjuster in a reservation of rights/*Cumis* situation. Durants attempt to support their contention by citing *Betts* v. *Allstate Ins. Co.* (1984) 154 Cal.App.3d 688 [201 Cal.Rptr. 528], where this court strongly disapproved of an insurance company's "back-dooring"—improperly obtaining information from one claims file and using it in another.

I write separately here to address the Durants' contention under *Betts*.[6]

In *Betts*, which arose from an automobile accident case, Allstate insured both the victim and the driver of the vehicle causing the injury. The victim refused to sign a medical authorization which would have granted Allstate access to the victim's relevant medical records; however, Allstate used the victim's own medical benefits file to obtain the information. Allstate's practice of "back-dooring" was characterized as "disreputable" and one which

---

*perior Court* (1985) 173 Cal.App.3d 274 [218 Cal.Rptr. 817] [insured's duty to promptly and accurately furnish insurer with information].)

[6] The majority states the relationship between insurer and insured is "akin" to a fiduciary relationship. I assume the majority's use of the word "akin" is intended to paraphrase the terminology used by the Supreme Court, stating the relationship between the insurer and insured is a " 'special relationship' . . . characterized by elements of public interest, adhesion, and fiduciary responsibility, [citation omitted.]" (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158].)

oppressed Allstate's own clients. (*Betts* v. *Allstate Ins. Co., supra,* 154 Cal.App.3d at p. 709.)

In contrast, here the insurer obtained otherwise privileged information not by raiding a separate file, but through communications with *Cumis* counsel—the attorney selected by the Durants, paid for by the insurer, who was obligated to zealously represent the Durants' interests. (See *Employers Ins. of Wausau* v. *Albert D. Seeno Const.* (N.D.Cal. 1988) 692 F.Supp. 1150, 1157.) Under these circumstances, where the insurer has complied with its duty to furnish and pay for independent counsel beholden only to its insured, it is difficult to say the insurer oppressed its insured in a manner even resembling the insurer's conduct in *Betts.*

## IMPLIED COVENANT

The Durants contend the implied covenant of good faith and fair dealing requires dual adjusters in a *Cumis* situation. Amicus curiae, Albert D. Seeno Construction Company, makes a similar contention, asserting "several California decisions have recognized the need to segregate the coverage file handling from the liability claims handling." As discussed below, not only has amicus curiae overstated the scope of existing law, there is nothing in the implied covenant to prohibit an insurer, under the circumstances of this case, in using a single adjuster for both liability and coverage.

The implied covenant of good faith and fair dealing requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits. "To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests." (*Frommoethelydo* v. *Fire Ins. Exchange, supra,* 42 Cal.3d at p. 214.) The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes. (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].)

The implied covenant does not require an insurer to indemnify noncovered claims. (*Native Sun Investment Group* v. *Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265, 1278 [235 Cal.Rptr. 34].) Accordingly, in determining whether to settle a third party claim, obviously the insurer may consider whether there is coverage. Of course, if the insurer honestly believes there is no coverage, and therefore rejects a reasonable settlement offer, it must "bear the responsibility if coverage is found." (*Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 237 [178 Cal.Rptr. 343, 636 P.2d 32].) Nevertheless, even the Durants acknowledge that somewhere in the insurance

company hierarchy, the liability and coverage files may be appropriately combined in evaluating settlement.[7]

Conceding the liability and coverage files may be combined at the "highest levels" of the claims process and in "serious cases" without violating the implied covenant, the Durants fail to explain why the same obligation of good faith and fair dealing is compromised when the insurer combines the files at the lowest level and in ordinary cases. Any assertion that the adjuster handling both liability and coverage, as distinguished from the vice-president of claims, is in a position to inappropriately gain access to otherwise privileged information is dispelled by the limits on *Cumis* counsel's disclosure duties now specified in Civil Code section 2860, subdivision (d). Because an insurer may appropriately consider coverage questions, and because an insured in a *Cumis* situation will have independent counsel charged with zealously representing solely the insured's interests, I agree with the majority's implicit conclusion that a single adjuster in the circumstances of this case does not violate the implied covenant of good faith and fair dealing.

Asking that we reach a different conclusion, amicus curiae cites *Manzanita Park* v. *Insurance Co. of North America* (9th Cir. 1988) 857 F.2d 549 for the proposition the liability adjuster may not simultaneously work against the insured on the coverage dispute.

In *Manzanita Park*, the insured was named as a defendant in a suit alleging the plaintiff, as either an independent contractor or as an employee, was injured on the insured's premises. The insurance policy covered liability if the plaintiff was determined to be an independent contractor, but not if he was an employee. The insurer reserved its right to assert noncoverage if the trial court determined the plaintiff was an employee. The insurer retained an attorney to defend the insured. Obviously, there was a potential conflict of interest. However, the insurer neither notified the insured of the potential conflict nor appointed independent counsel. Four days before trial, the lawyer retained by the insurer stipulated the plaintiff was an employee, almost guaranteeing a finding which would result in no coverage. On appeal from a summary judgment dismissing the insured's cause of action against the insured for breach of fiduciary duty, the court applied Arizona law and held the insurer's fiduciary obligations were consistent with those of the attorney retained to represent the insured, and as a result the insurer should have informed the insured of the conflict of interest and of the opportunity to have independent counsel. (*Manzanita Park* v. *Insurance Co. of North*

---

[7] The Durants suggest that commingling need only occur at "the highest levels of the liability insurer's claims process, reserved for serious cases with serious coverage disputes. . . ."

*America, supra*, 857 F.2d at p. 555.) Thus, *Manzanita Park* has nothing to do with a dual adjuster situation. The case equates an insurer's obligations with those of its attorney. Where, as here, the Durants have exercised their *Cumis* rights and have obtained independent counsel, *Manzanita Park* is inapposite.

CONCLUSION

Based upon the foregoing, I concur in the majority's holding.

A petition for a rehearing was denied January 10, 1990.