Filed 10/21/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MILLER MARITAL DEDUCTION TRUST et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>    Defendant and Appellant. | A155398<br><br>(City and County of San Francisco Super. Ct. No. CGC18564521) |

In this insurance coverage action, defendant Zurich American Insurance Company (Zurich) appeals from a June 22, 2018 order denying its special motion to strike the complaint pursuant to Code of Civil Procedure [1] section 425.16 as a strategic lawsuit against public participation (anti-SLAPP motion). We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The operative facts are taken from the complaint filed by plaintiffs Miller Marital Deduction Trust, by and through its trustees Helen Miller and James Morris (Miller Marital Trust) and Helen Miller, an individual (hereinafter also collectively referred to as "Millers"), and the declarations and exhibits submitted in connection with Zurich's anti-SLAPP motion.

**A.     Underlying Federal Action**

The Miller Marital Trust is the successor owner of certain real property previously owned by spouses Jack Miller (now deceased) and Helen Miller, and then owned by the

---

[1]     All further unspecified statutory sections refer to the Code of Civil Procedure.

Miller Family Trust. According to the Millers, the property is held in the Miller Marital Trust and is owned by Helen Miller and James Morris as trustees of that trust. Helen Miller, individually, does not own any interest in the property.

In August 2016, the Millers commenced an action in federal court against various previous owners including the Estate of Jack Miller, Deceased [2] (hereinafter referred to as the Miller Estate) and previous lessees including Mary DuBois (DuBois). The operative pleading, the first amended complaint filed in September 2017, sought redress for past environmental contamination that originated from a dry cleaning business that was in operation on the property from approximately 1956 to 1985. According to the Millers, releases of dry cleaning solvent from the business had polluted the property and that pollution had migrated, and was continuing to migrate, off the property, creating a growing plume of contamination. By their action, the Millers sought to avoid or minimize their alleged liability associated with certain directives issued by the California Regional Water Quality Control Board related to the environmental contamination on the property.

DuBois filed a counterclaim against the Millers, alleging they had intentionally and negligently caused and contributed to the sudden and accidental releases of dry cleaning solvent into the property. The counterclaim sought contribution under the common law and the Comprehensive Environmental Response, Compensation & Liability Act (42 U.S.C. § 9613) and damages for nuisance.

In their federal action, the Millers were represented by Bret Stone of the Paladin Law Group ® LLP. Zurich determined it had a duty to appear and defend the named

---

[2]    While named as a defendant, the Miller Estate "is a legal fiction – the defendant[s] [are] actually the insurers, Zurich and Allianz [Insurance Company]. [Citation.] Because . . . an 'estate' may not be sued . . . , [u]nder Probate Code § 550 . . . a plaintiff may directly sue an insurance company by naming [as defendant] . . . 'Estate of [Insured]' and then serving the insurer directly. Judgment against an estate under this section is enforced directly against the insurer. [(See Prob. Code § 554.)]"

defendant the Miller Estate under insurance policies issued from 1977 to 1984. To that end, Zurich retained counsel to represent the Miller Estate.

The Millers tendered the Dubois counterclaim for defense to Zurich on the theory that they were additional insureds under the Zurich insurance policies issued to the Miller Estate. Zurich agreed to represent and defend the Millers against the DuBois counterclaim subject to an extensive reservation of rights. The Millers asked Zurich to allow the Paladin Law Group ® LLP to represent them because of Zurich's reservations of rights as well as its appointment of separate counsel to defend the Miller Estate, an adverse party to the Millers, which situation the Millers alleged created conflicts of interest requiring the appointment of independent (*Cumis* [3]) counsel. Zurich refused the

---

[3] "*San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494]. When the insurer disputes liability for indemnification but continues to provide a defense for the insured against the claim, a potential conflict of interest arises. Assertions made to defeat the liability of the insurer under the policy may promote the claim of the third party against the insured. To remedy the conflict, *Cumis* held that the insurer is obligated to provide separate counsel for the insured in representation of the liability case, independent of the counsel utilized by the insurer in its coverage case." (*State Farm Fire & Casualty Co. v. Superior Court* (1989) 216 Cal.App.3d 1222, 1225, fn. 1.)

"In 1987, the Legislature enacted Civil Code section 2860, which codified the right to independent or *Cumis* counsel but 'clarifi[ed]' and 'limit[ed]' *Cumis*'s stated rights and responsibilities of insurer and insured. [Citations.] Under the statute, an insurer having a duty to defend its insured must provide its insured independent counsel when a 'conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured' unless 'at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel.' (Civ. Code, § 2680, subd. (a).) Subdivision (b) of the statute further explains when such a conflict might arise. It provides: 'For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.' . . . [¶] But Civil Code section 2860 does not purport to address any and all conflicts that might arise: 'It does not clearly state when the right to independent counsel

3

Millers' request and refused to pay *Cumis* counsel fees. Instead, Zurich retained an attorney (hereinafter referred to as panel counsel) to represent Helen Miller individually and as trustee of the Miller Marital Trust; Zurich did not appoint counsel to represent James Morris, the other trustee of the Miller Marital Trust.

### B.      Current State Action

In February 2018, while the federal action was pending, the Millers commenced this lawsuit against Zurich.[4] The Millers did not name any attorney as a defendant. Their complaint alleged, in pertinent part, that Zurich was in breach of its contractual duties under its insurance policies by refusing to pay for independent *Cumis* counsel to represent the Millers in defending against the DuBois counterclaim; refusing to pay reasonable and necessary site investigation, regulatory oversight, attorney fees, and other defense costs; and failing to deal in good faith with the Millers. The Millers alleged that "the *Cumis* issue, defense costs issue, and bad faith issue," needed to be resolved as soon as possible to ensure they were not prejudiced in their defense of the DuBois counterclaim "and to ensure that they receive what they are entitled to: an immediate and complete defense . . . by competent and conflict-free counsel."

The complaint alleged two causes of action: breach of the contractual duty to defend and breach of the implied covenant of good faith and fair dealing. As to the cause of action for breach of the implied covenant of good faith and fair dealing, the complaint alleged, under the heading "NATURE OF THE ACTION," as follows:

"8.      [Zurich's] refusal to pay for *Cumis* counsel and refusal to timely pay reasonable and necessary defense costs were unreasonable and without proper cause and,

---

vests.' [Citation.] . . . The language of Civil Code section 2860 "does not preclude judicial determination of conflict of interest and duty to provide independent counsel such as was accomplished in *Cumis* so long as that determination is consistent with the section." [Citation.]' [Citation.]" (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1420–1421.)

[4]      The complaint also named as defendants Allianz Insurance Company, Central Mutual Insurance Company, and Insurance Company of the West. These named insurers are not parties to this appeal.

4

therefore, constitute breaches of [its] implied covenant of good faith and fair dealing, *i.e.*, 'bad faith.'

"9. [Zurich] also committed bad faith by improperly allowing counsel – counsel that [it] had retained to defend one of the [Millers'] adversaries in the [federal] [a]ction – to communicate with and advise the [Millers'] claims handlers and to exert influence and control over the handling of the [Millers'] defense by panel counsel appointed by [Zurich]."

Under the complaint's heading, "SECOND CAUSE OF ACTION Breach of the Implied Covenant of Good Faith and Fair Dealing Against Zurich . . . ," the Millers alleged, in pertinent part:

"99. Although Zurich . . . [has] retained panel counsel to represent the [Millers], [Zurich has] instructed and limited panel counsel's ability to properly defend the [Millers] and instead [has] relied on Paladin Law Group ® LLP to do much of the work, [Zurich has] benefited from that work, and yet [Zurich has] refused to pay for that work.

"100. Zurich . . . breached the covenant of good faith and fair dealing by, unreasonably and without proper cause, refusing to pay reasonable and necessary defense costs in the [federal] [a]ction, including attorneys' fees billed by Paladin Law Group ® LLP.

"101. Although Zurich . . . ha[s] retained panel counsel to represent the [Millers], Zurich . . . [has] instructed and limited panel counsel's ability to properly defend the [Millers] and instead [has] relied on Paladin Law Group ® LLP to do much of the work, ha[s] benefited from that work, and yet [has], unreasonably and without proper cause, refused to pay for that work, which is also a breach of the covenant of good faith and fair dealing.

"102. Zurich . . . also breached the covenant of good faith and fair dealing by, unreasonably and without proper cause, refusing to pay site investigation costs and regulatory oversight costs related to investigation work [it] approved in advance for which the [Millers] have been threatened with a lien against their property.

"103. Zurich . . . also breached the covenant of good faith and fair dealing by retaining counsel to defend one of the [Millers'] adversaries in the [federal] [a]ction and by allowing that opposing counsel to advise Zurich . . . on the handling of the [Millers'] defense, including the scope of the [Millers'] environmental investigation, what opinions the [Millers'] expert witnesses would be allowed to offer, whether to influence the handling of the [Millers'] defense of the DuBois Counterclaim by panel counsel retained by Zurich . . . , whether to refuse to pay for *Cumis* counsel, and whether to refuse to pay

5

for regulatory oversight costs incurred as part of [the] investigation activities [Zurich] approved.

"104.  Zurich . . . [has] acted unethically and with total disregard for the [Millers] by controlling the panel counsel's handling of the case.  In one instance, counsel retained by Zurich . . . to defend the [Miller Estate], a party with interests that are adverse to the [Millers], threatened panel counsel appointed by Zurich . . . to defend the [Millers] that unless the [Millers'] expert opinions are used only for the [Millers] as counter-defendants, 'I will tell my client[ ] [Zurich . . .] that in my opinion you are acting outside your limited role of merely defending the counterclaim.'

"105.  Counsel retained by Zurich . . . to defend the [Miller Estate], a party with interests that are adverse to the [Millers], advised Zurich . . . regarding the handling of the [Millers'] defense.

"106.  On information and belief, counsel retained by Zurich . . . to defend the [Miller Estate], a party with interests that are adverse to the [Millers], advised Zurich . . . not to accept Paladin Law Group ® LLP as independent counsel for the [Millers].

"107.  On information and belief, counsel retained by Zurich . . . to defend the [Miller Estate], a party with interests that are adverse to the [Millers], advised Zurich . . . not to pay invoices for defense costs submitted by Paladin Law Group ® LLP.

"108.  On information and belief, counsel retained by Zurich . . . to defend the [Miller Estate], a party with interests that are adverse to the [Millers], advised Zurich . . . not to pay for the regulatory oversight costs charged to the [Millers] as a result of the investigation [Zurich] approved in advance.

"109.  On information and belief, counsel retained by Zurich . . . to defend the [Miller Estate], a party with interests that are adverse to the [Millers], instructed panel counsel retained by Zurich . . . to defend the [Millers] on what actions should or should not be taken to defend against the DuBois Counterclaim.

"110.  On information and belief, counsel retained by Zurich . . . to defend the [Miller Estate], a party with interests that are adverse to the [Millers], instructed panel counsel retained by Zurich . . . to defend the [Millers] to withdraw discovery that he had propounded on the [Miller Estate].

"111.  On information and belief, counsel retained by Zurich . . . to defend the [Miller Estate], a party with interests that are adverse to the [Millers], threatened panel counsel retained by Zurich . . . to defend the [Millers] with loss of future business if certain actions were not taken with respect to the [Millers'] defense of the DuBois Counterclaim.

6

"112. There is no objectively rational, let alone substantive, basis to support Zurich's . . . conduct in refusing to pay for *Cumis* counsel to represent the [Millers] in the [federal] [a]ction, refusing to pay for regulatory oversight costs incurred in the course of investigation activities [Zurich] approved, exerting influence and control over panel counsel's handling of the [Millers'] defense, and allowing the [Millers'] adversary to communicate with and advise the [Millers'] claims handlers, who were supposed to be on the side of the [Millers]."

Zurich filed an anti-SLAPP motion challenging both causes of action on the ground that the claims "arise from allegations about the conduct of attorneys representing Zurich's insured in the course of the" federal action, and that such allegations of petitioning activity subjected the complaint to an anti-SLAPP motion. Zurich further alleged the Millers could not demonstrate a probability of prevailing on the claims because the complained of conduct was protected by the litigation privilege. The Millers opposed the motion, arguing that the claims for breach of contract and the implied covenant of good faith and fair dealing did not arise from the petitioning activity allegations, had at least "minimal merit," and were not barred by the litigation privilege.

The trial court found Zurich had met its burden of demonstrating the applicability of the anti-SLAPP statute, commenting that "a bad faith action can be subject to the anti-SLAPP statute where the basis for liability is judicial communications" and the complaint's paragraphs 9 and 103–112, which included "numerous references to [Zurich's] communications with counsel during the federal action," were "more than . . . collateral or incidental allusions to protected activity" and were asserted "as a basis for liability." Nonetheless, the court held the Millers had met their burden of demonstrating a probability of prevailing on the merits based on the submission of evidence supporting their allegations that Zurich had not paid all required defense costs and allegations of a conflict of interest that warranted the appointment of *Cumis* counsel, and Zurich had failed to show that the litigation privilege barred the entirety of the claims.

7

Zurich's timely appeal ensued.[5]

## DISCUSSION

## I.      Applicable Law

"Section 425.16 expressly provides that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)  In evaluating a motion under the statute the trial court engages in 'a two-step process.  First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States [Constitution] or [the] California Constitution in connection with a public issue," as defined in the statute.  (§ 425.16, subd. (b)(1).)  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citations.]  'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 572–573 (*Robles*).)

"We review de novo the grant or denial of an anti-SLAPP motion.  [Citation.]  We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity.  [Citations.]" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)  Thus, if

---

[5]      Zurich filed a request for judicial notice of two orders that were filed in the federal action after the trial court rendered its decision under review.  Because the documents are not necessary to resolve the issues before us, we deny the request for judicial notice as moot.

the trial court's denial of the motion "is correct on any theory applicable to the case, we affirm the order regardless of the correctness of the grounds on which the [trial] court reached its conclusion." (*Robles*, *supra*, 181 Cal.App.4th at p. 574.)

## II. Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing is not Subject to Anti-SLAPP Motion

"In the first step of the anti-SLAPP analysis, the court decides only whether the claims arise from protected activity. The court reviews the parties' pleadings, declarations and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actionable. [Citation.] . . . If the substance, or gravamen, of the complaint does not challenge the defendant's acts in furtherance of the right of free speech or petition, the court does not consider whether the complaint alleges a cognizable wrong or whether the plaintiff can prove damages." (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1389–1390.)

The Millers seek relief against Zurich—and not against any counsel—based on the overarching premise that Zurich did not meet its duty to defend as it failed to provide independent conflict-free counsel to represent them in defending against the DuBois counterclaim. Zurich seeks to strike the cause of action for breach of implied covenant of good faith and fair dealing or certain allegations regarding communications between counsel that are alleged in paragraphs 103–111 of the complaint.

The cause of action for breach of implied covenant of good faith and fair dealing is based on the principle that "[e]very contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract. [Citations.] The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises. [Citations.]" (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 885.) Although a breach of the implied covenant of good faith and fair dealing is "necessarily a breach of contract," the scope of conduct prohibited by the "implied covenant often is pleaded as a separate count." (*Ibid.*) Thus, in addressing the interplay of the causes of actions, it has been said that a "[b]reach of an

9

insurer's duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing, for which tort remedies are appropriate.  [Citation.]" (*Amato v. Mercury Casualty Co*. (1997) 53 Cal.App.4th 825, 831; see *Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1009 ["[i]nsurer-imposed restrictions on discovery or other litigation costs may well violate the insurer's duty to defend as well as the [assigned] attorneys' ethical responsibilities to exercise their independent professional judgment in rendering legal services"].)

Despite Zurich's blanket contention to the contrary, "[n]ot all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16." (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037; see *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 729–730 (*Freeman*) [" '[a]lthough a party's litigation-related activities constitute "act[s] in furtherance of a person's right of petition or free speech," it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute' "].)  "There is a 'distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim.'  [Citation.]" (*Crossroads Investors, L.P. v. Federal National Mortgage Assn*. (2017) 13 Cal.App.5th 757, 776.)  "Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16.  [Citations.]  Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394.)

While a breach of the implied covenant of good faith and fair dealing may be carried out by means of communications between the parties' respective counsel, the fact of counsels' communications does not transform the claim to one arising from protected activity within the meaning of section 425.16.  The allegations of counsels' communications do not concern the substantives issue of the Millers' liability as alleged in the DuBois counterclaim or any coverage matter.  Instead, the communications concern procedural matters regarding "discovery," "correspondence with Zurich's claims

10

handlers," and "payments" to the Millers, directedly related to Zurich's duty to defend obligations owed to the Millers by appointing panel counsel to represent them in defending the DuBois counterclaim.

Thus, "[w]hat gives rise to liability" is not the fact of counsels' communications, but that Zurich allegedly denied the Millers the "benefit" of panel counsel's independent professional judgment in rendering legal services to them.  (See *Park*, *supra*, 2 Cal.5th at p. 1066 ["while discrimination may be carried out by means of speech, such as a written notice of termination, and an illicit animus may be evidenced by speech, neither circumstance transforms a discrimination suit to one arising from speech;" "[w]hat gives rise to liability is not that the defendant spoke, but that the defendant denied the plaintiff a benefit, or subjected the plaintiff to a burden, on account of a discriminatory or retaliatory consideration"]; see also *Hylton v. Frank E. Rogozienski, Inc*. (2009) 177 Cal.App.4th 1264, 1274–1275 [court found plaintiff's claim against his former attorney for allegedly giving improper advice, whether pleaded as a malpractice claim, a breach of fiduciary duty claim, or any other theory of recovery, was not subject to the anti-SLAPP statute merely because some of the allegations in the complaint referred to the attorney's actions in court].)  Consequently, we reject Zurich's argument that the allegations of counsels' communications give rise to its liability for an action for breach of the implied covenant of good faith and fair dealing.  " '[T]he lawsuit concerns a breach of duty that does not depend on [Zurich's] exercise of a constitutional right.' "  (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702 [" 'California courts have held that when a claim [by a lawyer] is based on breach of the fiduciary duty of loyalty or negligence, it does not concern a right of petition or free speech, though those activities arose from the filing, prosecution of and statements made in the course of the client's lawsuit;' " " '[t]he reason is that the lawsuit concerns a breach of duty that does not depend on the exercise of a constitutional right' "].)  In other words, and contrary to Zurich's contention, the allegations of counsels' communications are only evidence that provides the context for the allegation that Zurich unreasonably and without proper cause interfered with panel

11

counsel's representation of the Millers in defending against the DuBois counterclaim. (*Park*, *supra*, at p. 1068.)

We find no merit to Zurich's further argument that the trial court should have granted its request for alternative relief and stricken the allegations of counsels' communications as unnecessary. The Millers "can submit evidence" of counsels' communications to demonstrate that Zurich unreasonably and without proper cause interfered with panel counsel's representation of them, "but doing so does not establish those communications . . . as the 'facts upon which the liability … is based.' (§ 425.16, subd. (b)(2).)" (*Park*, *supra*, 2 Cal.5th at p. 1068; see *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 888 (*White*) [6] ["[d]efendant's argument . . . forces us to draw a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication;" "plaintiffs do not assert that defendant's communications were defamatory, or done with the intent of causing emotional distress, but instead that they show that defendant was not evaluating and seeking to resolve their claim fairly and in good faith"]; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 914–915 [" 'when allegations of misconduct properly put an individual's intent at issue in a civil action, statements made during the course of a judicial proceeding may be used for evidentiary purposes in determining whether the individual acted with the requisite intent;' " "[i]t follows that statements made during a judicial proceeding may also be used to prove the existence of bad faith in an action against an insurer"].) Accordingly, we see no error in the trial court's refusal to strike the challenged allegations of counsels' communications.

In sum, we uphold the trial court's denial of Zurich's anti-SLAPP motion, albeit on the ground that the anti-SLAPP statute does not apply to the cause of action for breach of implied covenant of good faith and fair dealing. Accordingly, we do not need to

---

[6]    *White, supra*, 40 Cal.3d 870, was superseded by statute on other grounds as stated in *Lee v. Fidelity National Title Ins. Co.* (2010) 188 Cal.App.4th 583, 596.

address whether the Millers met their burden of showing a reasonable probability of prevailing on the merits of the claim. (See *Freeman*, *supra*, 154 Cal.App.4th at p. 733 ["merits based arguments have no place in our threshold analysis of whether plaintiffs' causes of action arise from protected activity"].) Given the procedural posture of the case, Zurich is free to challenge the cause of action for breach of implied covenant of good faith and fair dealing on other grounds and through other procedural means. (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1288, fn. omitted.)

## DISPOSITION

The order filed on June 22, 2018 denying Zurich American Insurance Company's special motion to strike the complaint is affirmed. Respondents are awarded costs on appeal.

13

_____
Petrou, J.

WE CONCUR:


_____
Siggins, P. J.


_____
Wick, J.*

---

* Judge of the Superior Court of Sonoma County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

*A155398/Miller Marital Deduction Trust v. Zurich American Insurance Company*

Trial Court:   San Francisco County Superior Court

Trial Judge:   Hon. Richard B. Ulmer

Counsel:       Paladin Law Group, Bret A. Stone and Brian R. Paget for Plaintiffs and Respondents.

               Sinnott, Puebla, Champagne & Curet, Blaise S. Curet for Defendant and Appellant.